HELEN H. KANG (State Bar No. 124730)
ENVIRONMENTAL LAW AND JUSTICE CLINIC
GOLDEN GATE UNIVERSITY SCHOOL OF LAW
536 Mission Street
San Francisco, California 94105
Telephone:    (415) 442-6693
Facsimile:    (415) 896-2450
hkang@ggu.edu

LUCAS WILLIAMS (State Bar No. 264518)
HOWARD HIRSCH (State Bar No. 213209)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, California 94117
Telephone:    (415) 913-7800
Facsimile:    (415)759-4112
lwilliams@lexlawgroup.com
hhirsch@lexlawgroup.com

Attorneys for Plaintiff
CANDLESTICK HEIGHTS COMMUNITY ALLIANCE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDLESTICK HEIGHTS COMMUNITY ALLIANCE, an unincorporated association,<br><br>            Plaintiff,<br><br>      v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation,<br><br>            Defendant. | Case No.<br><br>**COMPLAINT**<br><br>[Clean Air Act Citizen Suit, 42 U.S.C. § 7604] |

## INTRODUCTION

1.        This is a citizen suit brought under section 304(a)(1) of the Clean Air Act (at times referred to as the "CAA" or "Act"), 42 U.S.C. § 7604(a)(1), by Candlestick Heights Community Alliance ("Alliance"), against the City and County of San Francisco ("City").  This complaint seeks relief for the City's ongoing failure to comply with the Act at a site within the Candlestick Point State Recreational Area, a state park in the Bayview Hunters-Point neighborhood ("Bayview") in San Francisco, California, where the City operates a "vehicle triage center" ("Center"), intended as a temporary shelter and service provider for unhoused persons living in vehicles.

2.        The City identified the site within the park as "optimal," noting that it has "existing infrastructure" for lights and committed to connect each of the 150 vehicles intended to be located at the Center with its own electricity.  The City also represented that the Center would make efforts to be a good neighbor to the nearby Candlestick Point community.

3.        Despite these representatons, and despite that the City has had time to find an alternate site for the unhoused persons—planning for the Center having begun in April 2021, if not earlier—the the Center still lacks electrical connections, and the City has not announced any intent to relocate the residents.  Rather than selecting a different site where electricity and thus better services could be provided, the City chose to house the City's unhoused populations in Bayview—uniquely economically disadvantaged and heavily polluted in the City and historically Black.

4.        Being committed to hiding the City's homelessness crisis and the vehicle encampment problem from the views of those more affluent than Bayview residents and knowing the Center's inability to access electricity provided by Pacific Gas & Electric, the City chose to install aand operate sixteen generators powered by diesel without a permit required by the Clean Air Act.  Pollution emitted from diesel generators is the number one source of cancer risks among toxic air contaminants in California.  The City itself recognizes the harmful nature of diesel emissions, stating in its Health Code that "[d]iesel exhaust is linked to short and long-term adverse health effects in humans, which include lung cancer, aggravation of symptoms, and chronic bronchitis and decreased lung functions."[1]

---

[1]    S.F. Health Code Art. 31, Sec. 2001.

COMPLAINT

5.      Bayview is one of the worst places for the City itself to emit illegal diesel pollution, a neighborhood that the City has long acknowledged to be "the focus of some of the city's most noxious and unhealthy heavy industries" where residents "can expect to live on average 14 years less than their counterparts in Russian Hill."[2]

6.      As a result of the City's unlawful conduct, the City has exposed the surrounding community to excess amounts of harmful diesel pollution, which is still being released into the neighborhood and atmosphere.  The City also violated and continues to violate the Act by failing to disclose the operation of the the sixteen generators in the application for a new permit for the three generators.  Without that information, the air regulator cannot fulfilll its function of either denying the permit altogether or imposing pollution reduction technology to protect public health.

## JURISDICTION

7.      Section 304 of the Act authorizes citizen suits against any person who has violated or is in violation of an "emission standard or limitation."  Section 304(a)(1) of the Act, 42 U.S.C. § 7604(a)(1).  The term "emission standard or limitation" is broadly defined in the Act to include an emission limitation; emission standard; any standard or limitation established under an applicable state implementation plan approved by the U.S. Environmental Protection Agency; and any requirement to obtain a permit as a condition of operations.  42 U.S.C. § 7604(f).

8.      On November 1, 2022, the Alliance gave notice to the City, the United States Environmental Protection Agency ("EPA"), and the State of California of its intent to file suit against the City, as required by the Act.  *See* Section 304(b) of the Act, 42 U.S.C. § 7604(b).  A copy of the notice is attached hereto as Exhibit A and is incorporated by reference.  More than sixty days have passed since the Alliance provided the requisite notice, and thus a citizen suit may be filed.

---

[2]    Bayview Hunters Point Area Plan, S.F. Planning Department; S.F. Environment, et al., San Francisco Healthy Homes Project: Community Health Status Assessment.

**VENUE**

9.       Venue is proper in the Northern District of California pursuant to section 304 of the Clean Air Act, 42 U.S.C. § 7604, and 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and the City resides in this District.

**INTRADISTRICT ASSIGNMENT**

10.      Assignment of this action to the San Francisco or Oakland Division is proper pursuant to Local Rule 3-2(d) because this is a civil action arising in San Francisco County.

**PARTIES**

11.      Plaintiff Candlestick Heights Community Alliance is an all-volunteer unincorporated association committed to making the Candlestick Heights and Bayview Hill neighborhoods within Bayview safe, clean, and well-maintained places to live.  To advance this goal, the Alliance advocates for fair and inclusive land use planning and protections from industrial and other polluting uses for Bayview communities.

12.      The Alliance's members live in and around areas directly affected by the Center.  The group and its members are directly, adversely, and irreparably affected by the unlawful diesel pollution.  Until and unless this Court provides relief, the Alliance and its members will continue to be harmed.

13.      The Alliiance is a "person" within the meaning of the section 304(a) of the Act, 42 U.S.C. § 7604(a).  Section 302(e) of the Act, 42 U.S.C. §7602(e).

14.      The Court's grant of the requested relief will redress the harm to the Alliance's interests by (1) requiring the City to obtain proper permits for the installation and operation of the sixteen diesel generators; (2) compelling the City to provide complete information to the air regulator so that it has the information it needs for making proper determinations concerning a permit denial or imposition of proper pollution control technology; (3) deterring the City and other industrial facilities in the region from future violations of the Act; and (4) providing up to $100,000 of civil penalties for mitigation projects to benefit the community.

15.      Defendant City and County of San Francisco is a municipal corporation.  The City, through San Francisco Department of Homelessness and Supportive Housing ("Department of Homelessness"), operates the Center, including the sixteen generators.

16.     The City is a "person" within the meaning of the section 304(a) of the Act, 42 U.S.C. § 7604(a).  Section 302(e) of the Act, 42 U.S.C. §7602(e).

**GENERAL ALLEGATIONS**

17.     The City operates the Center at or near 500 Hunters Point Expressway intended for up to 150 vehicles, including recreational vehicles.  Planning for the Center began at the latest by April 2021, when the City engaged with the California Department of Parks and Recreation to discuss subleasing a 312,000 square foot portion of the State Park.  The City identified the site as "optimal," noting that it has "existing infrastructure, including water, sewer, . . . and electrical poles for lights" and represented that the Center would make efforts to be a "good neighbor to the Candlestick Point community."  The City committed approximately fifteen million dollars for site improvements, operation, and other city services for parking and police services associated with the operation of the Center.

18.     In January 2022, the City and the California Department of Parks and Recreation entered into a sublease for the lease period of January 11, 2022 to January 12, 2024.  In October 2021, the City opened the Center to residents.

19.     When the Alliance learned of the City's plan to operate the Center, its members became concerned because of the City's historical failure to protect Bayview residents from harmful land use decisions.  Notable examples include the placement of the wastewater treatment facility in Bayview that processes 80 percent of the City's wastewater and yet is outdated, generates diesel pollution, and is highly odorous, compared to the one near the San Francisco Zoo; creation of an industrial center in Bayview on the Port of San Francisco property, with multiple lessees processing concrete material, known to emit harmful particulate matter, some without permits; the City's plan to implode Candlestick Park Stadium in the development of the park into a mini-city without notice to residents; and the continuing problems the community has had with the City's representations about the status of the extensive radioactive contamination from the former Naval Radiological Defense Laboratory at Hunters Point Naval Shipyards.  Thus, the Alliance monitored developments at the Center to protect its members and other residents and has been in communication with the Department of Homelessness, including filing suit for the City's failure to comply with California laws.

20.     On a date unknown to the Alliance but known to the City, the City installed and began to operate sixteen diesel-powered generators.

21.     Subsequently, on July 22, 2022, the City applied to the Bay Area Air Quality Management District ("Air District" or "BAAQMD") for permits to operate three large fossil-fuel powered generators to supply prime power to the Center.  Prime power is power to be used for daily needs, i.e., not emergency backup power typically needed to run essential equipment during power outages.  The large generators include two diesel-powered generators, which have a maximum rated output of 215 brake horsepower ("bhp") and 170.8 bph, as well as another generator that is run on liquified petroleum gas, which is mostly propane, with a maximum rated output of 230.12 bhp.  The permit process was put on hold until further notice to accommodate public engagement from Bayview residents and has since been renoticed on December 23, 2022, indicating the Air District's intent to provide permits to the City for operation of the three generators.  The notice, however, fails to mention or account for the existence of the sixteen generators, or what their fate will be once the three generators are provided final permits to operate.

22.     On October 4, 2022, while the permit process for the three large generators was still ongoing, members of the Alliance learned from an Air District inspector that he had visited the Center that day and had discovered sixteen diesel-powered generators already operating there.  The City's permit applications did not disclose the presence of these sixteen generators.

23.     As of October 7, 2022, forty-nine vehicles were parked at the Center.  The Alliance is informed and believes, and thereon alleges, that very few—perhaps one or two—residents have been transitioned to permanent housing from the Center.  The Center still lacks electricity.  Children lack light, except through the illegal opearation of the generators, to do homework.  Despite this known problem, the City continues to operate the Center.

24.     The Center and Bayview residents, including the Alliance members, are exposed to diesel pollution from the sixteen generators.

25.     The areas directly in the Center vicinity have among the highest pollution burdens in the entire state.  According to a mapping tool developed by the State of California known as "CalEnviroScreen 4.0," the two census tracts immediately northwest of the project (census tracts

6075023400 and 6075061000) have pollution burdens in the 80th and 90th percentiles.  "Pollution Burden represents the potential exposures to pollutants and the adverse environmental conditions caused by pollution," according to the State.  The score indicates that the burden in these two census tracts is higher than 80 and 90 percent, respectively, of other census tracts in California.

26.     The City and the Air District have similarly acknowledged Bayview's pollution burden and socioeconomic vulnerabilities.  The Area District has designated Bayview as an "Overburdened Community of Color" and a "Respiratory Care Zone" because of the high levels of air pollution.  The City's General Plan, too, acknowledges that Bayview "has been the focus of some of the city's most noxious and unhealthy heavy industries, including steel manufacturing, ship repair, junkyards, and auto wrecking."  Bayview still hosts the largest percentage of industrial sites, brownfields, leaking underground fuel tanks, and a Superfund site when compared to the same conditions for residents in the rest of the city.

27.     These are the areas where the City's community of color lives: 89% of Bayview residents are Asian-American, Black, and Hispanic, according to the most recent census data.  Bayview is still one of the few remaining areas in the City where Black residents live, including members of the Alliance.

28.     It is into this polluted neighborhood that the generators at the Center emit diesel pollution.  Diesel generators emit diesel particulate matter ("PM"), benzene, and nitrogen oxides, among other dangerous pollutants.  For the two census tracts referred to above next to the Center, the diesel PM score is 100: they are the census tracts most polluted with diesel particulate matter in the State of California.  Diesel PM is extremely harmful to humans.  California's chief air regulator, the California Air Resources Board, recognizes diesel PM as the number one source of cancer risks among toxic air contaminants.  The reason diesel PM is so harmful is that its small size enables it to penetrate deep into the lung tissue, damaging DNA and causing cancer.  The City itself recognizes the harmful nature of diesel PM and bans non-emergency use of certain diesel engines with horsepower ("hp") equal or greater than 50 for more than 50 hours per year.  S.F. Health Code, Art. 31, Sec. 2001 ("Diesel exhaust is linked to short and long-term adverse health effects in humans, which include lung cancer,

aggravation of respiratory and cardiovascular disease, aggravation of existing asthma, acute respiratory symptoms, and chronic bronchitis and decreased lung function.").

29.     If the diesel generators were being operated by anyone other than the City, the City's own Health Code would bar its operation for prime power generation and could not operate them for more than 50 hours per year.

**STATUTORY BACKGROUND**

30.     The Clean Air Act, 42 U.S.C. §§ 7401-7671q, enacted in 1970 and amended in 1977 and 1990, establishes a comprehensive program to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7404(b)(1).  This program is founded on shared federal and state responsibility.

31.     The Clean Air Act creates a framework for the development and operation of federal, state and local programs to prevent and control air pollution.  42 U.S.C. § 7401(a)(4).

32.     Sections 108 and 109 of the Act require EPA to establish, review, and revise nationally applicable health-based standards for a small class of common air pollutants, known as national ambient air quality standards ("NAAQS").  42 U.S.C. §§ 7408-7409.  The NAAQS establish permissible concentrations of those pollutants in the "ambient," or outside air.  *See, e.g.*, 40 C.F.R. § 81.305.

State Implementation Plans

33.     Section 110 of the Act requires that each state adopt, and submit to EPA for approval, a plan for the implementation, maintenance, and enforcement of the NAAQS in each air quality control region within the state.  42 U.S.C. § 4710.  These plans are known as State Implementation Plans.

34.     Among other things, State Implementation Plans contain controls on individual sources of air pollution, as well as specific enforceable strategies for government agencies to implement, attain, and maintain the NAAQS.  42 U.S.C. § 7410.  Plans approved by EPA become federal law.  Thus, violations of State Implementation Plan requirements applicable to individual sources of air pollution are subject to enforcement by the United States and its citizens.

35.     Included in the applicable State Implementation Plan for the Bay Area Air Quality Management District Act ("SIP Regulation") are SIP Regulations 1 and 2, which were EPA-approved. 64 Fed. Reg. 34558 (June 28, 1999) (SIP Regulation 1, with exceptions not relevant here); 83 Fed. Reg.

23372 (May 21, 2018) (SIP Regulation 2).  SIP Regulations 1 and 2 are therefore "emission standards or limitation" within the meaning of the Act.

36.     "The purpose of [SIP] Regulation 2 is to provide an orderly procedure for the review of new sources of air pollution, . . . through the issuance of authorities to construct and permits to operate." SIP Regulation 2-1-101.

37.     A new source is "[a]ny source that has not been in existence before."  SIP Regulation 2-1-232.  A "source" means "[a]ny article, machine, equipment, operation, contrivance, or related groupings of such which may produce and/or emit air pollutants."  SIP Regulation 2-1-221.

38.     Before any new sources can be built or installed by "any person," the SIP Regulation first requires an authority to construct, i.e., a permit, from the Air District.  SIP Regulation 2-1-301.  A "person" is defined to include "[a]ny . . . government agency."  Regulation 1-221.

39.     SIP Regulation 2-1-401 further requires any person who requires an authority to construct to "secure a permit to operate."  *See also* SIP Regulation 2-1-302 ("[b]efore any person . . . uses or operates any article, machine, equipment, or other contrivance, the use of which may cause . . . the emission of air contaminants, such person shall first secure written authorization from the [Air District] in the form of a permit to operate").

40.     The sixteen generators each and together are an article, machine, equipment, or other contrivance, the use of which may cause the emission of air contaminants.

41.     The City is a "person" within the meaning of the SIP Regulations because a government agency is included in the definition.  SIP Regulation 1-221.

**FIRST CAUSE OF ACTION**

**[Authority to Construct Permit—Violations of SIP Regulation 2-1-301]**

42.     The Alliance realleges and incorporates by reference the previous paragraphs, as though fully alleged herein.

43.     The Alliance is informed and believes, and thereon alleges, that the maximum output of the sixteen generators that the City installed at the Center is each under 50 bhp; if any one of them is operated together with another, the maximum output would exceed 50 bhp.  The Alliance is further informed and believes, and thereon alleges, that these generators are used for prime power generation at

1     the Center and has been installed or constructed at the same time and more than one has operated at the

2     same time since their installation.

3           44.       The City installed these sixteen generators without first applying for or receiving the

4     required authority to construct permit from the Air District.  These sixteen generators together are a

5     "source," i.e., "any article, machine, equipment, operation, contrivance, or related grouping of such

6     which may produce and/or emit air pollutants," including diesel PM and ozone precursors such as

7     nitrogen oxides.  SIP Regulation 2-1-221; *see also* SIP Regulation 2-1-213 (defining a facility as any

8     "aggregation" of sources under "common ownership or control").

9           45.       Together, the sixteen generators have a maximum output rating greater than 50 bhp.

10    They do not qualify for any exemptions from permitting, including from SIP Regulation 2-1-114.2,

11    which exempts from permitting "internal combustion (IC) engines . . . with a maximum output rating

12    less than or equal to 50 bhp."

13          46.       Because the City, a "person" under SIP Regulation 1-221, did not apply for or receive an

14    authority to construct before installing the sixteen generators, the City has violated and is in violation of

15    SIP Regulation 2-1-301.

16          47.       The City's violation of an emissions standard or limit has continued every day since the

17    generators were first installed.  The precise dates of the violations are known only to the City because it

18    has failed to apply for any permits and therefore the information is unknown to the public.

19          48.       Unless ordered by this Court, the City will continue to violate SIP Regulation 2-1-301, in

20    violation of the Act.

21                              **SECOND CAUSE OF ACTION**

22              **[Permit to Operate – Violations of SIP Regulation 2-1-302 and 2-1-401]**

23          49.       The Alliance realleges and incorporates by reference the previous paragraphs, as though

24    fully alleged herein.

25          50.       The City, a "person" who requires an authority to construct the sixteen generators, has

26    failed to obtain a permit to operate from the Air District in violation of SIP Regulations 2-1-302 and 2-1-

27    401.

28

51.     The City's violation of an emissions standard or limit has continued every day since the City began to operate more than one generator simultaneously without a permit to operate.  The precise dates of the violations are known only to the City because it has failed to apply for any permits and therefore the information is unknown to the public.

52.     Unless ordered by this Court, the City will continue to violate SIP Regulations 2-1-302 and 2-1-401.

### THIRD CAUSE OF ACTION

**[Complete Application – Violation of SIP Regulation 2-1-202]**

53.     Plaintiff realleges and incorporates by reference the previous paragraphs, as though fully alleged herein.

54.     SIP Regulation 2-1-202 provides that "[e]very application for an authority to construct or a permit to operate . . . shall contain . . . [s]ufficient information for the [Air District] to determine the emissions from the sources that are the subject of the application."

55.     In July 2022, when the City submitted an application for three fossil-fuel powered generators, it failed to include information concerning the sixteen generators, which also emit air pollution.  Such information is relevant to the permitting decision for the three generators because the permitting process determines the pollution controls necessary, including pollution abatement or control practices or devices.  For example, in proposing draft permits for the three generators based on applications submitted in July 2022, the Air District proposed to require raising the stack heights and locating the generators in different areas within the Center site to decrease cancer risks from the three generators.  Without these changes, the cancer risk would have exceeded 6.0 in a million, and the permits would have been denied.  *See* Draft Engineering Evaluation from the District for Facility ID 202754, Candlestick Point/Bayview Vehicle Triage Center, 500 Hunters Point Expressway, San Francisco, CA 94124, Application No. 663096 (Aug. 22, 2022).

56.     However, because the City failed to provide complete information in its July 2022 application to the Air District as required by SIP Regulation 2-1-202, the practices the Air District proposed to impose for the three generators to reduce cancer risks were insufficient.  Had the City provided complete information, including information concerning the emissions from the sixteen

generators, the Air District may have had to propose imposing additional conditions to further protect public health.  Without the information the City was required to provide under SIP Regulation 2-1-202, the Air District could not make the determinations required by the Act.

57.     The City violated SIP Regulation 2-1-202 by failing to provide complete information regarding emissions in its application, and is in violation every day since July 22, 2022 that the City has failed to provide complete information.

58.     Unless ordered by this Court, the City will continue to violate SIP Regulation 2-1-202.

### FOURTH CAUSE OF ACTION

### [Circumvention Not Permitted – Violations of SIP Regulation 1-104]

59.     Plaintiff realleges and incorporates by reference the previous paragraphs, as though fully alleged herein.

60.     Under SIP Regulation 1-104, "[a] person shall not undertake or authorize any practice intended or designed to evade or circumvent District Rules or Regulations."

61.     By installing more than one generator at the Center, each at or under 50 bph, while undertaking to install them and operate more than one generator at a time, the City, a "person" within the meaning of the SIP Regulation 1-221, undertook or authorized a practice intended or designed to evade the permitting regulations set forth in SIP Regulations 2-1-301, 2-1-302, and 2-1-401.  In particular, the City's practice circumvented the permitting requirements through attempting to rely on an exemption for internal combustion engines specified in SIP Regulation 2-1-114.2, which is inapplicable to a maximum output rating greater than 50 bph.

62.     Separately, the City undertook and is continuing to undertake or authorize a practice intended to evade or circumvent SIP Regulation 2-1-202 by failing to provide complete information concerning the sixteen generators as specified in the Third Cause of Action.

63.     The City therefore has been in violation of the Act since installing and operating the sixteen generators, when the City undertook or authorized a practice intended to evade the permitting regulations set forth in SIP Regulations 2-1-301, 2-1-302, and 2-1-401, by failing to apply for an authority to construct and a permit to operate for the sixteen generators.  The precise dates of the

1   violations are known only to the City and cannot be known without records that are made available to

2   the Alliance.

3       64.        Unless ordered by this Court, the City will continue to violate SIP Regulation 1-104.

4                                   **PRAYER FOR RELIEF**

5           The Candlestick Heights Community Alliance requests that this Court:

6       1.        Order the City to cease violating the Clean Air Act by preliminarily and permanently

7   enjoining the violations;

8       2.        Pursuant to section 304(a) of the Clean Air Act, 42 U.S.C. § 7604(a), order the City to

9   pay civil penalties, up to $109,024 per day, or an amount adjusted for inflation, for each violation of the

10  Clean Air Act, and order that up to $100,000 of such penalties be used in beneficial mitigation projects

11  consistent with section 304(g) of the Clean Air Act, 42 U.S.C. § 7604(g);

12      3.        Pursuant to section 304(d) of the Act, 42 U.S.C. § 7604(d), order the City to pay

13  Plaintiff's costs of litigation, including reasonable attorney and expert witness fees; and

14      4.        Award such other and further relief as this Court deems just and proper.

15

16  DATED:  January 6, 2023              **ENVIRONMENTAL LAW AND JUSTICE CLINIC**
                                         **GOLDEN GATE UNIVERSITY SCHOOL OF LAW**
17

18

19                                              /s/ Helen H. Kang
                                         Helen H. Kang
20

21                                       **LEXINGTON LAW GROUP**

22

23                                              /s/ Lucas Williams
                                         Lucas Williams
24

25                                       Attorneys for Plaintiff
                                         CANDLESTICK HEIGHTS COMMUNITY ALLIANCE
26

27

28

EXHBIT A

**GOLDEN GATE UNIVERSITY**

SCHOOL OF LAW
ENVIRONMENTAL LAW AND JUSTICE CLINIC

536 Mission Street, Suite 3326
San Francisco, CA 94105-2968
Telephone: (415) 442-6647
Facsimile: (415) 896-2450
www.ggu.edu/law/eljc

November 1, 2022

**BY CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Shireen McSpadden, Executive Director
San Francisco Department of Homelessness
and Supportive Housing
City and County of San Francisco
440 Turk Street
San Francisco, CA 94102

Re:    Notice of Intent to File Suit Under the Clean Air Act

To the City and County of San Francisco:

The Clean Air Act (the "Act") requires that citizens give sixty days' notice of their intent to file suit under section 304(a)(1) of the Act, 42 U.S.C. § 7604(a)(1). Accordingly, the Candlestick Heights Community Alliance (the "Alliance") hereby provides notice to the following persons in their capacities identified below:

- The City and County of San Francisco (the "City"), within which the San Francisco Department of Homelessness and Supportive Housing ("DHSH") belongs, in its capacity as the owner and operator of unpermitted polluting equipment, the person submitting incomplete information in permit applications for other equipment, and the person undertaking or authorizing a practice to circumvent applicable regulations, all in violation of the Act;
- The Administrator of the United States Environmental Protection Agency ("EPA"); and
- The State of California, as the state in which the violation occurred and will continue to occur.

The Alliance intends to bring suit under the Act, after expiration of sixty days from the date of this letter. The lawsuit will be brought in the United States District Court for the Northern District of California, against the City for violation of the Act, as more specifically stated below.

**I.    Background**

**A. The City's Unpermitted Operation of Sixteen Diesel-Powered Generators**

The City, through DHSH, operates in the Candlestick Point State Recreational Area ("State Park") a "vehicle triage center" (at times referred to as the "Center") at or near 500

City and County of San Francisco
November 1, 2022
Page 2 of 8

Hunters Point Expressway, which is intended as a temporary shelter for persons experiencing homelessness and living in vehicles, including recreational vehicles. The Center is intended to accommodate approximately 150 vehicles, each with access to electricity. The State Park is public trust land located in the Bayview-Hunters Point district ("Bayview"), in the southeastern part of the city.

The City's planning for opening the Center began at the latest by April 2021, when the City engaged with the California Department of Parks and Recreation to discuss subleasing a 312,000 square feet portion of the State Park for the purpose of operating the vehicle triage center. The City identified the site as "optimal," noting that it has "existing infrastructure, including water, sewer, . . . and electrical poles for lights" and represented that the Center would make efforts to be a "good neighbor to the Candlestick Point community." The City committed fifteen million dollars for site improvements, operation, and other city services for parking and police services associated with the operation of the Center. Accordingly, in January 2022, the City and the California Department of Parks and Recreation entered into a sublease for the lease period of January 11, 2022 to January 12, 2024. As of October 7, 2022, forty-nine vehicles are parked at the Center.

On July 22, 2022, the City applied to the Bay Area Air Quality Management District ("Air District") for permits to operate three large fossil-fuel powered generators to supply prime power to the Center. Prime power is power to be used for daily needs, i.e., not emergency backup power typically needed to run essential equipment during power outages. The large generators include two diesel-powered generators, which have a maximum rated output of 215 brake horsepower ("bhp") and 170.8 bph.

The City applied for the permits for these large generators more than a year after the City began preparations for the Center, apparently after discovering that supply chain issues prevented the City from providing electricity from Pacific Gas & Electric, the energy provider in the area. In connection with these applications, the City disclosed no other generators operating at the site.

On October 4, 2022, in a meeting with the Alliance, an investigator from the Air District stated that he had visited the Center that day and that sixteen diesel-powered generators were already operating at the site. The investigator stated that the maximum rated output of these generators is each under 50 bhp. These generators are used for prime power generation. The City did not receive any permits from the Air District for these generators despite that the sixteen generators together have a maximum rated output that exceeds 50 bhp.

**B. The Pollution Burden in the Bayview-Hunters Point District**

The Alliance's members live in Bayview, which is historically a redlined area, i.e., an area where residents could not access government-backed mortgage programs, and one of the few areas where the city's Black residents lived. Today, it remains a community of color: 89% of residents are Asian-American, Black, and Hispanic, according to the most recent census data. Bayview is still one of the few remaining areas in the City where Black residents live.

City and County of San Francisco
November 1, 2022
Page 3 of 8

The neighborhoods in Bayview directly surrounding the vehicle triage center have among the highest pollution burdens in the entire state. According to a mapping tool developed by the State of California known as "CalEnviroScreen 4.0," the two neighborhoods immediately northwest of the project (census tracts 6075023400 and 6075061000) have pollution burdens in the 80 and 90 percentiles. "Pollution Burden represents the potential exposures to pollutants and the adverse environmental conditions caused by pollution," according to the State. The score indicates that the burden in these two census tracts is higher than 80 and 90 percent, respectively, of other census tracts in California.

The City and the Air District have similarly acknowledged Bayview's pollution burden and socioeconomic vulnerabilities. The Area District has designated Bayview as an "Overburdened Community of Color" and a "Respiratory Care Zone" because of the high levels of air pollution. The City's General Plan, too, acknowledges that Bayview "has been the focus of some of the city's most noxious and unhealthy heavy industries, including steel manufacturing, ship repair, junkyards, and auto wrecking." Bayview still hosts the largest percentage of industrial sites, brownfields, leaking underground fuel tanks, and a Superfund site when compared to the same conditions for residents in the rest of the city. According to the City, Bayview residents "can expect to live on average 14 years less than their counterparts in Russian Hill."

Diesel generators emit diesel particulate matter ("PM"), benzene, and nitrogen oxides, among other dangerous pollutants. For the two census tracts referred to above next to the vehicle triage center, the diesel PM score is 100: they are the census tracts most polluted with diesel particulate matter in the State of California. Diesel PM is extremely harmful to humans. California's chief air regulator, the California Air Resources Board, recognizes diesel PM as the number one source of cancer risks among toxic air contaminants. The reason diesel PM is so harmful is that its small size enables it to penetrate deep into the lung tissue, damaging DNA and causing cancer. The City itself recognizes the harmful nature of diesel PM and bans non-emergency use of certain diesel engines with horsepower ("hp") equal or greater than 50 for more than 50 hours per year. S.F. Health Code, Art. 31, Sec. 2001 ("Diesel exhaust is linked to short and long-term adverse health effects in humans, which include lung cancer, aggravation of respiratory and cardiovascular disease, aggravation of existing asthma, acute respiratory symptoms, and chronic bronchitis and decreased lung function.").

## II.    Violations of Emission Standards or Limitations

The Act authorizes citizen suits against any person who has violated or is in violation of an "emission standard or limitation." Section 304(a)(1) of the Act, 42 U.S.C. § 7604(a)(1). The term "emission standard or limitation" is broadly defined to include an emission limitation; emission standard; and any other standard or limitation established under "any applicable State implementation plan approved by the [EPA]" and any requirement to obtain a permit as a condition of operations. *Id.* § 7604(f).

Included in the applicable State Implementation Plan for the Bay Area Air Quality Management District Act ("SIP Regulation") are SIP Regulations 1 and 2, which were EPA-approved. 64 Fed. Reg. 34558 (June 28, 1999) (SIP Regulation 1, with exceptions not relevant

City and County of San Francisco
November 1, 2022
Page 4 of 8

here); 83 Fed. Reg. 23372 (May 21, 2018) (SIP Regulation 2).  SIP Regulations 1 and 2 are therefore "emission standards or limitation" within the meaning of the Act.  The City has violated and is in violation of an emission standard or limitation within the meaning of the Act because the City has failed to comply with SIP Regulations 1 and 2, as detailed below.

### A. The City Has Violated and Is in Violation of SIP Regulation 2-1-301 Because the City Installed the Generators Without an Authority to Construct

"The purpose of [SIP] Regulation 2 is to provide an orderly procedure for the review of new sources of air pollution, . . . through the issuance of authorities to construct and permits to operate."  SIP Regulation 2-1-101.  A new source is "[a]ny source that has not been in existence before."  SIP Regulation 2-1-232.  A "source" means "[a]ny article, machine, equipment, operation, contrivance, or related groupings of such which may produce and/or emit air pollutants."  SIP Regulation 2-1-221.  Before any new sources can be built or installed by "any person," the SIP Regulation first requires an authority to construct, a permit, from the Air District.  SIP Regulation 2-1-301.  A "person" is defined to include "[a]ny . . . government agency."  Regulation 1-221.

Sometime after accepting vehicles at the Center, in or around January 2022, and before October 4, 2022, the precise date of which is known to the City, the City installed sixteen diesel generators at the Center without first applying for or receiving the required authority to construct permit from the Air District.  These sixteen generators together are a "source," i.e., "any article, machine, equipment, operation, contrivance, or related grouping of such which may produce and/or emit air pollutants," including diesel PM and ozone precursors such as nitrogen oxides.  SIP Regulation 2-1-221; *see also* SIP Regulation 2-1-213 (defining a facility as any "aggregation" of sources under "common ownership or control").  Together, the sixteen generators have a maximum output rating greater than 50 bhp.  They do not qualify for any exemptions from permitting, including from SIP Regulation 2-1-114.2, which exempts from permitting "internal combustion (IC) engines . . . with a maximum output rating less than or equal to 50 bhp."

Because the City, a "person" under SIP Regulation 1-221, did not apply for or receive an authority to construct before installing the sixteen generators, the City has violated and is in violation of SIP Regulation 2-1-301.  The City's violation of an emissions standard or limit has continued every day since the generators were first installed, which was presumably after January 2022.  The precise dates of the violations are known only to the City because it has failed to apply for any permits and therefore the information is unknown to the public.

### B. The City Has Violated and Is in Violation of SIP Regulations 2-1-302 and 2-1-401 Because the City Is Operating the Generators Without a Permit to Operate

SIP Regulation 2-1-401 requires any person who requires an authority to construct to "secure a permit to operate."  *See also* SIP Regulation 2-1-302 ("[b]efore any person . . . uses or operates any article, machine, equipment, or other contrivance, the use of which may cause . . .

City and County of San Francisco
November 1, 2022
Page 5 of 8

the emission of air contaminants, such person shall first secure written authorization from the [Air District] in the form of a permit to operate"). The City has not obtained a permit to operate from the Air District.

As detailed in Part II.A above, the City is a "person" who requires an authority to construct and yet is operating a group of sources emitting air contaminants, such as diesel PM and nitrogen oxides, without a permit to operate. The City therefore has been in violation of the Act sometime after January 2022, when the City began operating more than one generator simultaneously at the Center without a permit. The precise dates of the violations are known only to the City because it has failed to apply for any permits and therefore the information is unknown to the public.

### C. The City Has Violated and Is in Violation of SIP Regulation 2-1-202, Which Requires the City to Provide a Complete Permit Application

SIP Regulation 2-1-202 provides that "[e]very application for an authority to construct or a permit to operate . . . shall contain . . . [s]ufficient information for the [Air District] to determine the emissions from the sources that are the subject of the application." In July 2022, when the City submitted an application for three fossil-fuel powered generators, it failed to include information concerning the sixteen generators, which also emit air pollution. Such information is relevant to the permitting decision for the three generators because the permitting process determines the pollution controls necessary, including pollution abatement or control practices or devices. For example, in proposing draft permits for the three generators based on applications submitted in July 2022, the Air District proposed to require raising the stack heights and locating the generators in different areas within the Center site to decrease cancer risks from the three generators. Without these changes, the cancer risk would have exceeded 6.0 in a million, and the permits would have been denied. See Draft Engineering Evaluation from the District for Facility ID 202754, Candlestick Point/Bayview Vehicle Triage Center, 500 Hunters Point Expressway, San Francisco, CA 94124, Application No. 663096 (Aug. 22, 2022).

However, because the City failed to provide complete information in its July 2022 application to the Air District as required by SIP Regulation 2-1-202, the practices the Air District proposed to impose for the three generators to reduce cancer risks were insufficient. Had the City provided complete information, including information concerning the emissions from the sixteen generators, the Air District may have had to propose imposing additional conditions to further protect public health. Without the information the City was required to provide under SIP Regulation 2-1-202, the Air District could not make the determinations required by the SIP.

The City therefore violated the Act by failing to provide complete information as required on July 22, 2022, and is in violation every day that it fails to provide complete information.

City and County of San Francisco
November 1, 2022
Page 6 of 8

### D. The City Has Violated and Is in Violation of SIP Regulation 1-104 Because the City Undertook or Authorized Practices to Evade or Circumvent the Permitting Regulations

SIP Regulation 1-104 provides that "[a] person shall not undertake or authorize any practice intended or designed to evade or circumvent District Rules or Regulations." By installing more than one generator at the Center, each at or under 50 bph, while undertaking to install them and operate more than one generator at a time, the City, a "person" within the meaning of the SIP, undertook or authorized a practice intended or designed to evade the permitting regulations set forth in SIP Regulations 2-1-301, 2-1-302, and 2-1-401. In particular, the City's practice circumvented the permitting requirements through attempting to rely on an exemption for internal combustion engines specified in SIP Regulation 2-1-114.2, which is inapplicable to a maximum output rating greater than 50 bph.

Separately, the City undertook and is continuing to undertake or authorize a practice intended to evade or circumvent SIP Regulation 2-1-202 by failing to provide complete information concerning the sixteen generators as specified in Part I.C above.

The City's practice to circumvent the SIP Regulations is a separate violation of the Act apart from the individual violations set forth above in Parts I.A, I.B, and I.C. (The City's circumvention of SIP Regulation 2-1-114.2 provide an additional basis for the violations specified in Parts I.A and I.B above as well.)

The City therefore has been in violation of the Act since sometime after January 2022, when the City undertook or authorized a practice intended to evade the permitting regulations set forth in SIP Regulations 2-1-301, 2-1-302, and 2-1-401, by failing to apply for an authority to construct and a permit to operate for the sixteen generators. The precise dates of the violations are known only to the City and cannot be known without records that are made available to the Alliance.

The City has also been in violation of the Act since July 22, 2022, when the City submitted incomplete information for the three generators, by failing to disclose the operation of the sixteen generators.

### III. The Entity Giving Notice and Potential Resolution of Issues During the Sixty-Day Period

The entity giving notice is the Candlestick Heights Community Alliance, an unincorporated association, located at 88 Ignacio Ave., San Francisco, CA 92124.

The Alliance is represented by legal counsel. Because the Alliance is represented by legal counsel, you should contact the Alliance by contacting only legal counsel.

City and County of San Francisco
November 1, 2022
Page 7 of 8

Legal counsel representing the Alliance in this matter are:

Helen Kang
Lucas Williams
Environmental Law and Justice Clinic
Golden Gate University School of Law
536 Mission Street
San Francisco, CA 94105-2968
Telephone: 415-442-6647
Facsimile: 415-896-2450

During the sixty-day notice period, the Alliance is willing to discuss effective remedies for the violations of the Act at issue in this notice.  If you wish to pursue such discussions, we suggest that you initiate them within the next ten days with legal counsel so that the discussions may be completed before the end of the sixty-day notice period.  We do not intend to delay the filing of a complaint if the discussions fail to resolve the matter within the sixty-day notice period, and we intend to seek all appropriate relief, including injunctive relief, penalties, and all costs of litigation.

We believe that this notice provides information sufficient for you to identify the violations of the Clean Air Act, the activity alleged to be in violation, and the location of the alleged violations.  If, however, you have any questions, please contact us for clarifications.

We look forward to hearing from you.

Sincerely,

Helen Kang
Lucas Williams

cc:     Hon. Michael S. Regan, Administrator
        U.S. Environmental Protection Agency
        Ariel Rios Building
        1200 Pennsylvania Avenue, N.W.
        Mail Code: 1101A
        Washington DC 20460
        (Certified Mail/Return Receipt Requested)



City and County of San Francisco
November 1, 2022
Page 8 of 8

Hon. Chairman Liane M. Randolph
Executive Officer
California Air Resources Board
1001 I Street
Sacramento, CA 95814
(Certified Mail/Return Receipt Requested)

Hon. Martha Guzman
Regional Administrator
Office of Regional Administrator
U.S. Environmental Protection Agency
Region 9
75 Hawthorne Street
Mail Code: ORA-1
San Francisco, CA, 94105
(U.S. Mail)

Hon. Gavin Newsom
Governor of California
State Capitol Building
Sacramento, CA 95814
(U.S. Mail)

