1  DAVID CHIU, State Bar #189542
   City Attorney
2  ROBB W. KAPLA, State Bar #238896
   KATHY J. SHIN, State Bar #318185
3  Deputy City Attorneys
   City Hall, Room 234
4  1 Dr. Carlton B. Goodlett Place
   San Francisco, California 94102-4682
5  Telephone:    (415) 554-4700
   Facsimile:    (415) 554-4757
6  E-Mail:       robb.kapla@sfcityatty.org
                 kathy.shin@sfcityatty.org
7

8  Attorneys for Defendant
   CITY AND COUNTY OF SAN FRANCISCO
9

10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13

14  CANDLESTICK HEIGHTS COMMUNITY          Case No. 3:23-cv-00082-SK
    ALLIANCE, an unincorporated association,
15                                          **DEFENDANT'S NOTICE OF MOTION AND**
          Plaintiff,                        **MOTION FOR JUDGMENT ON THE**
16                                          **PLEADINGS; OPPOSITION TO PLAINTIFF'S**
          vs.                               **MOTION FOR LEAVE TO FILE**
17                                          **SUPPLEMENTAL COMPLAINT UNDER**
    CITY AND COUNTY OF SAN                  **FRCP 15(d)**
18  FRANCISCO, a municipal corporation,
                                            Hearing Date:   November 20, 2023
19        Defendant.                        Time:           9:30 a.m.
                                            Place:          Zoom video conference
20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. iii

NOTICE OF MOTION AND MOTION ................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................2

INTRODUCTION ....................................................................................................................2

STATEMENT OF ISSUES .....................................................................................................3

BACKGROUND ......................................................................................................................3

    I.      Regulatory Background. ................................................................................3

    II.     Factual and Procedural Background. ............................................................4

         A.     Temporary Operation of 16 Portable Light Towers. ......................4

         B.     City's Permit Application for Two PERP Engines........................5

LEGAL STANDARD..............................................................................................................6

ARGUMENT ............................................................................................................................8

    I.      Plaintiff Lacks Standing to Bring this Action. ...........................................8

         A.     Plaintiff Fails to Allege an Injury in Fact. ...................................9

             1.     Plaintiff Fails to Allege a Concrete and Particularized Injury........9

             2.     Lack of an Actual or Imminent Injury Precludes Injunctive Relief........................................................................11

         B.     Plaintiff Fails to Link Any Alleged Injury to the City..............13

             1.     Plaintiff Cannot Trace the Alleged Harm from Diesel Emissions to the City's Operation of the VTC...............13

             2.     Any Causal Chain For (Non)Permitting Injuries is Too Attenuated to Support Standing. .....................................14

         C.     Plaintiff Cannot Establish the Redressability of Its Claims......15

             1.     Civil Penalties Carry No Deterrent Effect in This Case. ..............15

             2.     No Order from the Court Could Remedy Plaintiff's Asserted Injury.......................................................16

    II.     Plaintiff Fails to State a Plausible Claim to Relief Under the Clean Air Act. .......17

         A.     The Sixteen Light Towers are Exempt from District Permitting Requirements.................................................................18

         B.     The Definition of a Complete Application is Not an Enforceable Emission Standard.............................................................20

         C.     Circumvention is Not an Enforceable Emission Standard.......................21

    III.    Supplementation of the Complaint Would be Futile. ...............................21

    IV.    If Plaintiff's Action is Not Dismissed, the District Must be Joined as a Required Party....................................................................................23

1

CONCLUSION.................................................................................................................24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Federal Cases**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.,*
    744 F.3d 595 (9th Cir. 2014) ................................................................8

*Alaska Dep't of Envtl. Conservation v. E.P.A.,*
    540 U.S. 461 (2004).........................................................................19

*Bayview Hunters Point Cmty. Advocs. v. Metro. Transp. Comm'n,*
    366 F.3d 692 (9th Cir. 2004) ................................................. *passim*

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...........................................................................7

*California Dump Truck Owners Ass'n v. Nichols,*
    784 F.3d 500 (9th Cir. 2015) ...............................................................3

*Carrico v. City & Cnty. of San Francisco,*
    656 F.3d 1002 (9th Cir. 2011) ..............................................................8

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983)...........................................................................11

*Coal. for Clean Air v. VWR Int'l, LLC,*
    922 F. Supp. 2d 1089 (E.D. Cal. 2013) ...............................18, 20, 21

*Cook, Perkiss & Lieche, Inc. v. N. Cal. Collection Serv., Inc.,*
    911 F.2d 242 (9th Cir. 1990) ................................................................8

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006)...........................................................................8

*Davidson v. Kimberly-Clark Corp.,*
    889 F.3d 956 (9th Cir. 2018) ..............................................................11

*Dworkin v. Hustler Mag. Inc.,*
    867 F.2d 1188 (9th Cir. 1989) ..............................................................7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
    528 U.S. 167 (2000)................................................................ *passim*

*Hertz Corp. v. Friend,*
    559 U.S. 77 (2010).............................................................................7

*In Re Peabody W. Coal Co.,*
    2005 WL 428833 ..............................................................................19

*Johnson v. Buckley,*
    356 F.3d 1067 (9th Cir. 2004) ..............................................................8

*Johnson v. Federal Home Loan Mortg. Corp.*,
   793 F.3d 1005 (9th Cir. 2015) ...............................................................................7

*Juliana v. United States*,
   947 F.3d 1159 (9th Cir. 2020) ..............................................................................15

*League to Save Lake Tahoe, Inc. v. Trounday*,
   598 F.2d 1164 (9th Cir. 1979) ...............................................................18, 19, 20

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) .................................................................................7

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).........................................................9, 10, 13, 16, 17

*Lyon v. U.S. Immigr. & Customs Enf't*,
   308 F.R.D. 203 (N.D. Cal. 2015)...........................................................................8

*Manufactured Home Communities Inc. v. City of San Jose*,
   420 F.3d 1022 (9th Cir. 2005) .................................................................................7

*Nat. Res. Def. Council, Inc. v. S. Coast Air Quality Mgmt. Dist.*,
   651 F.3d 1066 (9th Cir. 2011) ...............................................................................18

*Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*,
   457 F.3d 941 (9th Cir. 2006) ....................................................................9, 10, 17

*Planned Parenthood of Southern Ariz. v. Neely*,
   130 F.3d 400 (9th Cir.1997) .................................................................................8

*Plotkin v. Ryan*,
   239 F.3d 882 (7th Cir. 2001) ...............................................................................16

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291, 296 (9th Cir. 1990) .........................................................................8

*Safe Air For Everyone v. EPA*,
   488 F.3d 1088 (9th Cir.2007) ...............................................................................18

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)...............................................................................8, 9, 11

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ...............................................................................7

*St. Clair v. City of Chico*,
   880 F.2d 199 (9th Cir. 1989) .................................................................................7

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)...............................................................................15, 16

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .............................................................................8, 9, 11

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ..........................................................................7

*Washington Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) ...............................................................8, 13, 15

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ..........................................................................7

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
    5 F.4th 997 (9th Cir.) .....................................................9, 10, 13, 15, 17

*WildEarth Guardians v. Pub. Serv. Co. of Colorado*,
    690 F.3d 1174 (10th Cir. 2012) ......................................................................16

**Federal Statutes**
42 U.S.C. § 7410(a)(2)(A) ..........................................................................17

42 U.S.C. § 7410(a)(2)(E) ..........................................................................17

42 U.S.C. § 7604(g) ..................................................................................16

Federal Rule of Civil Procedure Rule 12(b) ............................................................6

Fed. R. Civ. P. 12(b)(1) ..........................................................................6, 7

Fed. R. Civ. P. 12(b)(6) ..........................................................................6, 7

Fed. R. Civ. P. 12(b)(7) ..............................................................................6

Fed. R. Civ. P. 12(c) ................................................................................6

Fed. R. Civ. P. 12(h) ................................................................................6

Fed. R. Civ. P. 12(h)(3) ..............................................................................9

Fed. R. Civ. P. 15(d) ................................................................................7

**Regulations**
76 Fed. Reg. 26609 ..................................................................................18

76 Fed. Reg. 26612 ..................................................................................18

**Other References**
5C Wright & Miller, Fed. Prac. & Proc. § 1367 (3d ed. 2023) ..........................................6

1

## NOTICE OF MOTION AND MOTION

2  TO THE COURT AND TO ALL PARTIES:

3      Please take notice that Defendant City and County of San Francisco (the "City") will, and

4  hereby does, move for judgment on the pleadings as against the Complaint in this action pursuant to

5  Rule 12(c) of the Federal Rules of Civil Procedure.  This motion will be heard at 9:30 a.m. on

6  November 20, 2023 by the Honorable Sallie Kim in the Northern District of California, San Francisco

7  Courthouse, 450 Golden Gate Avenue, Courtroom C, 15th Floor, San Francisco, CA 94102.  Pursuant

8  to Judge Kim's scheduling notes, the hearing will be conducted by Zoom video conference until

9  further notice.

10      The City seeks dismissal of the Complaint in its entirety without leave to amend and a

11  judgment in the City's favor as a matter of law on all claims alleged by the Plaintiff.  This motion is

12  based on the Memorandum of Points and Authorities set forth below, the Request for Judicial Notice

13  and Declaration of Marc Macaraeg filed concurrently herewith, the pleadings, and on such other

14  matters as may be considered by the Court at the hearing on the motion.

15  Dated:  October 16, 2023

16                                                    DAVID CHIU
                                                     City Attorney
17                                                   ROBB W. KAPLA
                                                     KATHY J. SHIN
18                                                   Deputy City Attorneys

19

20                                              By:/s/ Kathy J. Shin
                                                    KATHY J. SHIN
21
                                                    Attorneys for Defendant
22                                                  CITY AND COUNTY OF SAN FRANCISCO

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This case concerns the City's sponsorship of a parking lot in the Candlestick Point State Recreation Area as a temporary shelter for San Franciscans living in their vehicles.  The project was conceived by members of the community working with local and state leaders to address vehicular homelessness and encampments in the Bayview Hunters Point neighborhood, which had culminated into a humanitarian crisis during the Covid-19 pandemic.  Plaintiff represents a group intent through this action, and a parallel state court action, on closing the site.

In the operative Complaint, Plaintiff purports to bring a citizen suit under the Clean Air Act to challenge the City's temporary use of 16 portable diesel light towers at the site without a permit from the Air District.  Each light tower was powered by a 5.1 horsepower diesel engine, falling below the 50 horsepower threshold required for permits under District regulations, and most of the lights were replaced with permanent solar installations before Plaintiff even filed suit.  Plaintiff nevertheless persists in its action under a novel horsepower aggregation theory, by which 16 individual engines become one large engine for purposes of permit exemptions, regardless of the subject engine type and emissions reduction capacity.  Plaintiff offers no authority for its theory, which conflicts with the plain language of District regulations, express written opinions by the District (agreeing that the light towers were exempt and did not require a permit), and the Clean Air Act's overarching concern with regulating source emissions, not horsepower.

In short, the Complaint is based on pure speculation and fails to identify any concrete harm that Plaintiff's members suffered by way of the City's temporary operation of the light towers.  As a collateral attack on the Air District's permitting protocols, this Court also lacks any ability to redress Plaintiff's (abstract) injuries, as the District is not a party to this action.  As Plaintiff's proposed Supplemental Complaint does not, and cannot, cure the deficiencies with Plaintiff's standing to proceed in the federal forum, and cannot cure the legal deficiencies with its claims, Plaintiff's motion for leave to file its supplemental pleading should be denied, and the Complaint dismissed without leave to amend.

**STATEMENT OF ISSUES**

The two motions set for hearing on November 20, 2023 present three issues: (1) whether Plaintiff has standing to bring the claims alleged in the Complaint; (2) whether the Complaint states a plausible claim to relief under section 304(a)(1) of the Clean Air Act, 42 U.S.C. § 7604(a)(1); and (3) whether Plaintiff should be granted leave to file its proposed supplemental complaint.

**BACKGROUND**

**I.     Regulatory Background.**

"The CAA creates a partnership between the federal government and the states to combat air pollution." *California Dump Truck Owners Ass'n v. Nichols*, 784 F.3d 500, 502 (9th Cir. 2015).  The United States Environmental Protection Agency ("EPA") promulgates national ambient air quality standards ("NAAQS") for certain air pollutants, and states implement these standards within their borders through a state implementation plan ("SIP").  *Id.*  Specifically, each state is required to adopt, and submit for the EPA's approval, "a plan which provides for implementation, maintenance, and enforcement" of the NAAQS.  42 U.S.C. § 7410(a)(1).  Once approved, a SIP may be enforced "by either the State, the EPA, or via citizen suits brought under Section 304(a) of the CAA."  *Bayview Hunters Point Cmty. Advocs. v. Metro. Transp. Comm'n*, 366 F.3d 692, 695 (9th Cir. 2004); *see also* Compl. ¶¶ 30-34.

In California, "local and regional authorities have the primary responsibility for control of air pollution from all [nonvehicular emissions] sources," Cal. Health & Safety Code § 40000, and the State Air Resources Board ("CARB") is responsible for coordinating the activities of local air districts to prepare the SIP.  *Id.* § 39602.  Subject to CARB's oversight, local or regional districts "adopt and enforce" the required elements of the SIP for areas under their jurisdiction.  *Id.* § 40001(a).  The Bay Area Air Quality Management District ("BAAQMD" or "District") has jurisdiction in San Francisco.  *Id.* § 40200.  As relevant here, the EPA approved BAAQMD Regulation 1, "General Provisions and Definitions," on June 28, 1999, and BAAQMD Regulation 2, "Permits," Rule 1, "General Requirements," on May 21, 2018, for inclusion in the California SIP.  Compl. ¶ 35.

## II.    Factual and Procedural Background.[1]

On January 11, 2022, the City subleased "approximately 312,000 square feet of parking lot" in the Candlestick Point State Recreation Area ("CPSRA"), in San Francisco, from the State of California, for use as a Vehicle Triage Center ("VTC").  Request for Judicial Notice, "RJN," Exh. A; Compl. ¶ 18.  The VTC serves as a temporary shelter for unhoused persons living in their vehicles, where guests may safely park and "stay in their vehicles while accessing a variety of services and resources to support a permanent exit from homelessness".  RJN, Exh. B, p. 4; Compl. ¶ 1.  The San Francisco Board of Supervisors authorized the sublease pursuant to a declared shelter crisis, finding that the subject parking lot was "underutilized" and an "optimal site for [the VTC] . . . to resolve the vehicle encampment in the vicinity of the CPSRA," which had grown to an "unsafe level" during the COVID-19 pandemic.  RJN, Exh. B, p. 3-4; Compl. ¶ 17.  The City also committed to certain onsite improvements, including "install[ing] . . . site lighting" and "upgrad[ing] electrical service . . . at the Property."  RJN, Exh. B, p. 5; Compl. ¶ 17.

### A.    Temporary Operation of 16 Portable Light Towers.

The City's planned site improvements included phased installation of permanent solar lighting, as existing lights at the site were in disrepair and had been removed.  Declaration of Marc Macaraeg, "Macaraeg Decl." ¶ 4.  The installation would require months of lead time, including time for fabrication of the solar fixtures.  *Id.*  As the VTC would open for operation on January 21, 2022, the City required interim lighting solutions for nighttime illumination relating to the safety and security of the site.  *Id.*  Although the City considered portable solar lighting options, City engineers determined that these options lacked sufficient power to provide the required nighttime lighting.  *Id.* ¶ 5.  The City ultimately rented 16 portable light towers for this purpose.  *Id.*  Manufacturer cut sheets from the City's vendor provide that each of the 16 light towers contained a 5.1 horsepower, Tier 4 Final diesel engine.[2]  *Id.*  The light towers were distributed across the VTC to ensure adequate lighting throughout

---

[1] The City assumes as true Plaintiff's allegations in the Complaint except where contradicted by judicially noticeable documents or evidence relevant to the Court's subject matter jurisdiction.

[2] The EPA has adopted engine tiers for nonroad diesel engines corresponding to the stringency of the emissions reduction, with Tier 0 being the dirtiest, uncontrolled engine and Tier 4 Final being the cleanest standard. RJN Exh. C, p. 2-3.

the site and egress driveway.  *Id.* ¶ 6.  The City first operated the 16 lights around January 18, 2022,

and they were used daily between sunset and sunrise until most were replaced by permanent solar

fixtures.  *Id.* ¶ 7.

By February 2022, the City had placed a purchase order for 17 permanent light poles and solar

panels.  Macaraeg Decl. ¶ 8.  By December 22, 2022, eight of these fixtures were installed and

operational at the VTC, and the City discontinued use of nine of the sixteen portable diesel light

towers at this time.  *Id.*  By March 28, 2023, the City had installed nine more permanent solar light

poles and only one portable diesel light tower remains at the site.  *Id.* ¶ 9.

### B.    City's Permit Application for Two PERP Engines.

Electrical service existing at the site proved to be insufficient to accommodate both site

operations and the needs of VTC guests to power personal medical devices, store and prepare meals,

and illuminate and heat individual vehicles.  Macaraeg Decl. ¶ 10.  Accordingly, the City applied for

additional utility service from Pacific Gas & Electric.  *Id.*  Faced with ongoing delays in this effort, in

July 2022 the City applied for a temporary permit from BAAQMD to operate two diesel electricity

generators at the VTC while waiting for additional permanent power.[3]  *Id.*; *see also* Compl. ¶ 21.  The

two generators are registered as Tier 4 Final equipment under CARB's Portable Equipment

Registration Program ("PERP", hereinafter "PERP engines").  Macaraeg Decl. ¶ 10.  On September

20, 2022, Plaintiff filed a motion for preliminary injunction in a parallel state court action to enjoin the

City from operating the PERP generators at the site.[4]  ECF No. 17.  The City's permit application with

BAAQMD remains pending, and at no time has the City operated these two generators.  Macaraeg

Decl. ¶ 11.  Plaintiff's motion was denied.  RJN, Exh. D.

On or about November 1, 2022, Plaintiff mailed a Notice of Intent to File Suit Under the Clean

Air Act ("NOI") to the San Francisco Department of Homelessness and Supportive Housing.  Compl.

¶ 8, Exh. A.  The NOI states that on October 4, 2022, Plaintiff learned from a District inspector that

the City was operating "sixteen diesel-powered generators" at the VTC, each with a maximum rated

---

[3] In August 2022, the City also applied for a temporary permit to operate one propane (natural gas) generator, but withdrew that application on January 4, 2023.  Macaraeg Decl. ¶ 10, n. 1.

[4] On November 29, 2021, Plaintiff filed a petition for writ of mandate and complaint in superior court, challenging the sublease agreement that allows for the VTC.  ECF No. 17.

output of less than 50 brake horsepower ("bhp").  Compl., Exh. A, ¶ 22; RJN Exh. J, ¶ 2 (Plaintiff's declaration identifying the District inspector as Simon Winer); RJN Exh. K.  The notice further states that the City violated SIP regulations by installing and operating these "generators" at the VTC without a permit.  *Id.*  Based on the 16 unit count, the City understood the notice to be referencing the 16 portable light towers used at the site.  Answer ¶ 20; Macaraeg Decl. ¶ 12.  BAAQMD did not issue a notice of violation for use of the lights, Macaraeg Decl. ¶ 12, and based on guidance in the BAAQMD Permit Handbook, City staff determined that the light towers, each 5.1 horsepower, were exempt from District permitting requirements.  *Id.* ¶ 13; RJN Exh. I.  City staff further confirmed that the lights were exempt with the District permit engineer assigned to the City's application for the two PERP engines, Cameron Fee.  *Id.*  After District inspector Simon Winer took the position that the light towers were exempt from BAAQMD permitting requirements, the District, through its Director of Engineering, further confirmed the exemption to Plaintiff.  RJN Exh. E; Exh. K.

While waiting for the permit from BAAQMD, the City located the two PERP engines onsite to be ready to operate immediately upon issuance of a permit.  Macaraeg Decl. ¶ 14.  On May 12, 2023, the District issued the City a Notice to Comply ("NTC"), finding that the City's arrangement of the PERP generators constituted a minor violation of District rules.  *Id.* ¶ 15.  The City promptly moved the generators to an alternate location onsite, disconnected the batteries, and otherwise complied with the direction in the District's notice.  On May 15, 2023, the District inspector confirmed the City's compliance with BAAQMD regulations and notated the NTC accordingly.  *Id.*

Fact discovery in the action closed on September 22, 2023.  ECF No. 22.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  Certain defenses enumerated in Federal Rule of Civil Procedure Rule 12(b) may be raised through a Rule 12(c) motion, including lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to join a party under Rule 19.  Fed. R. Civ. P. 12(h); 5C Wright & Miller, Fed. Prac. & Proc. § 1367 (3d ed. 2023).  When these procedural defects are raised through Rule 12(c), district courts apply the standard of review that otherwise applies to a motion brought under Rules 12(b)(1), (6), or (7), respectively.

Wright & Miller, *supra*, § 1367; *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog").

A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings (a "facial attack") or by presenting extrinsic evidence (a "factual attack"). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In a factual attack, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (the moving party may also "rely on affidavits or any other evidence properly before the court"). "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)).

Under Rule 12(b)(6), a complaint is properly dismissed if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although allegations of material fact are generally taken as true, the Court is not required to accept the truth of "unwarranted deductions of fact, or unreasonable inferences," *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005), or "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Similarly, the Court need not accept as true allegations that are contradicted by documents referenced in the Complaint, *Johnson v. Federal Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007–1008 (9th Cir. 2015), or "allegations that contradict matters properly subject to judicial notice." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The plausibility standard for pleadings thus "requires more than labels and conclusions"; rather, to survive a motion to dismiss, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Parties may supplement pleadings based on events "that happened after the date of the [original] pleading." Fed. R. Civ. P. 15(d). Supplemental pleadings may only be filed with leave of court. *Id.* Although leave to file is favored to promote judicial efficiency, "it cannot be used to introduce a separate, distinct and new cause of action". *Planned Parenthood of Southern Ariz. v.*

1  *Neely*, 130 F.3d 400, 402 (9th Cir.1997) (internal quotations omitted).  "The legal standard for

2  granting or denying a motion to supplement under Rule 15(d) is the same as for amending one under

3  15(a)."  *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 214 (N.D. Cal. 2015).  Such leave "is

4  properly denied . . . if amendment would be futile."  *Carrico v. City & Cnty. of San Francisco*, 656

5  F.3d 1002, 1008 (9th Cir. 2011).  "Futility alone can justify the denial of a motion to amend."

6  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

7      A district court may dismiss a complaint without leave to amend if "amendment would be

8  futile."  *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir.

9  2014); *see also Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss &*

10  *Lieche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

11                                    **ARGUMENT**

12  **I.      Plaintiff Lacks Standing to Bring this Action.**

13      The standing doctrine "is an essential and unchanging part of the case-or-controversy

14  requirement of Article III," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).  It requires

15  plaintiffs to allege "such a personal stake in the outcome of the controversy as to warrant [*their*]

16  invocation of federal-court jurisdiction."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)

17  (internal quotes omitted, original italics).  "An association has standing to bring suit on behalf of its

18  members when its members would otherwise have standing to sue in their own right . . . ."  *Friends of*

19  *the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).  The "irreducible

20  constitutional minimum of standing" requires the association to show that at least one member has "(1)

21  suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3)

22  that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330,

23  338 (2016) (internal quotes omitted); *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th

24  Cir. 2013) ("the relevant inquiry is whether at least one member . . . has established standing to sue in

25  his or her right").

26      A plaintiff must demonstrate standing for each claim they seek to press and "for each form of

27  relief sought."  *DaimlerChrysler Corp*, 547 U.S. at 352.  "When the plaintiff is not himself the object

28  of the government action or inaction he challenges, standing is not precluded, but it is ordinarily

substantially more difficult to establish." *Summers*, 555 U.S. at 493 (internal quotation omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### A.      Plaintiff Fails to Allege an Injury in Fact.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A "concrete" injury "must actually exist." *Id.* (distinguishing concrete from abstract injuries). Standing thus "requires more than an injury to a cognizable interest." *Lujan*, 504 U.S. at 563 (finding a citizen suit plaintiff under the Endangered Species Act had to show "not only that listed species were in fact being threatened . . . , but also that one or more of [its] members would thereby be 'directly' affected apart from their 'special interest in the subject'"). To be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. The plaintiff must be "among the injured." *Lujan*, 504 U.S. at 563.

### 1.      Plaintiff Fails to Allege a Concrete and Particularized Injury.

Plaintiffs alleging a "a bare procedural violation, divorced from any concrete harm," fail to meet the demands of Article III. *Spokeo*, 578 U.S. at 341. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* (finding "not all inaccuracies cause harm or present any material risk of harm"); *see also Summers*, 555 U.S. at 496 ("deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing."). "[G]eneral averments" and "conclusory allegations" are likewise inadequate. *Laidlaw*, 528 U.S. at 184. "[F]or Article III purposes, the plaintiff must assert a concrete interest . . . that is threatened by the proposed action." *Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n.*, 457 F.3d 941, 952 (9th Cir. 2006). A "free-floating assertion of a procedural violation, without a concrete link to the interest protected by the procedural rules, does not constitute an injury in fact." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1013 (9th Cir.), cert. denied, 142 S. Ct. 713 (2021). In the Ninth Circuit, "analysis of Article III standing is 'not fundamentally changed' by the fact that a petitioner asserts a 'procedural,' rather than a 'substantive' injury'." *Nuclear Info.*, 457

F.3d at 949 (citation omitted).  Ultimately, plaintiffs asserting a procedural claim need to "establish the reasonable probability of the challenged action's threat to their concrete interest."  *Mayorkas*, 5 F.4th at 1013 (bracket and citation omitted).

"[E]nvironmental plaintiffs must allege that they *will suffer harm* by virtue of their geographic proximity to and use of areas that will be affected by the agency's policy."  *Nuclear Info.*, 457 F.3d at 952 (original italics).  In *Nuclear Info.*, plaintiffs challenged the Nuclear Regulatory Commission's revision to regulations concerning the transportation of radioactive material for failure to comply with the procedural requirements of the National Environmental Policy Act ("NEPA").  *Id.* at 944.  The plaintiff had alleged a cognizable procedural injury and geographic nexus to the source of harm (i.e., members alleged that they used public streets on which they might be exposed to the unregulated transportation of radioactive material).  *Id.* at 951-52.  Yet the court dismissed the case for lack of standing, finding the plaintiff did not show a concrete and particularized injury:

> NIRS fails to show that its members' concrete interest is threatened by *the challenged regulation,* rather than by "unregulated transportation of radioactive material" in the abstract. The declarations simply express undifferentiated "concerns"—the same concerns about nuclear hazards shared by the public at large—and speculate that unregulated transportation of radioactive material in general—*not this regulation in particular*—may present unspecified threats to their health. . . . As the members here have not shown that their interests are directly affected or threatened, they are in the same position as plaintiffs "raising only a generally available grievance about the government" and "seeking relief that no more directly and tangibly benefits [them] than it does the public at large" that *Lujan* indicates do not satisfy Article III's case or controversy requirement.

*Id.* at 954 (quoting *Lujan,* 504 U.S. at 573–74; original italics).

The present Complaint seeks injunctive relief and civil penalties based on four claims. The first two claims contend that the City violated the Clean Air Act by failing to obtain permits, an Authority to Construct and a Permit to Operate, for the 16 diesel-engine light towers at the VTC as allegedly required by the SIP.  Compl. ¶¶ 42-52.  The third claim contends the City violated the SIP by failing to provide information about the 16 lights towers in its permit application for the PERP generators.  Compl. ¶¶ 53-58.  The fourth claim contends the City acted to "circumvent" District regulations by its alleged acts in the preceding claims. Compl. ¶¶ 59-64.

As discussed below, Plaintiff's claims fail because the 16 portable light towers were operated legally and the City did not omit any required information from its permit application. But even assuming a violation, the action must be dismissed because the Complaint does not allege a concrete or particularized injury to any individual member of Plaintiff Candlestick Heights Community Alliance (CHCA).  Rather, Plaintiff alleges that "members live in and around areas directly affected by the [VTC]" Compl. ¶ 12, and asserts general claims about the potential harm of diesel particulate matter, Compl. ¶ 28.  It does not, however, identify an injury or threat of injury to a concrete interest or otherwise allege that CHCA members are at all affected by the City's use of sixteen 5.1 horsepower, Tier 4 Final diesel engines.  Plaintiff also does not contend that *any* level of diesel emissions is harmful.  Rather, it asserts that "members are directly, adversely, and irreparably affected by *the unlawful* diesel pollution," Compl. ¶ 12 (italics added), and seems to concede that a single light tower, or any number below the 50 bhp exemption threshold, is not problematic.  Compl. ¶¶ 43, 45.  In other words, Plaintiff is alleging a "bare procedural violation" insufficient for Article III standing.  *Spokeo*, 578 U.S. at 341.

## 2. Lack of an Actual or Imminent Injury Precludes Injunctive Relief.

Standing for injunctive relief requires the threat of injury to be "actual and imminent, not conjectural or hypothetical." *Summers*, 555 U.S. at 493.  "[I]n a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is certainly impending." *Laidlaw*, 528 U.S. at 190.  Unless the alleged misconduct "was occurring at the time the complaint was filed," standing for injunctive relief is premised on a threat of recurring injury. *Laidlaw*, 528 U.S. at 184 (discussing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)).  In that case, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  To determine whether an injury is similar, courts examine the issue "realistically . . . and consider . . . the context of the inquiry." *Id.*

Respecting the light towers, Plaintiff contends that absent a court order, "the City will continue to violate [the] SIP." Compl. ¶¶ 48, 52.  The allegation is conclusory and apparently controverted by

Plaintiff's expressed disclaimer of any knowledge as to when the City began (or stopped) using the lights: "The precise dates of the violations are known only to the City because it has failed to apply for any permits and therefore the information is unknown to the public."[5]  Compl. ¶¶ 47, 51.  In fact, by December 22, 2022, the City had replaced nine of the 16 diesel light towers with permanent solar alternatives, and only seven of the 5.1 horsepower engines were in use when Plaintiff filed suit on January 6, 2023.  *See* Macaraeg Decl. ¶ 8.  Accordingly, even on Plaintiff's horsepower aggregation theory, the City was operating approximately 35 total horsepower, below the 50 bhp exemption threshold.  Plaintiff also does not, and cannot, allege any realistic threat that the City has resumed, or is likely to resume, using all 16 portable light towers at the VTC, given the installation of permanent solar lighting at the site.  In any event, unlike the analysis for mootness, "if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum."  *Laidlaw*, 528 U.S. at 191.

Respecting Plaintiff's alleged omission in the PERP engine application, here too both the Complaint and the undisputed record shows that any alleged harm was cured before Plaintiff filed suit.  Specifically, Plaintiff contends that "[h]ad the City provided complete information . . . concerning the emissions from the sixteen generators, the Air District may have had to propose imposing additional conditions to further protect public health."  Compl. ¶ 56.  The allegation is wholly speculative, including because the City's permit application remains pending, and the permit conditions the District would impose were it to approve the application are unknown.  The allegation is also vague, as Plaintiff fails to identify what information about the 16 lights the City was required to provide and which was unknown to the District.  Finally, the claim is refuted by Plaintiff's allegation that it had learned about the lights from the District itself—i.e., the District knew about the "16 generators" at least as early as October 4, 2022 when a District inspector visited the VTC and "discovered sixteen diesel-powered generators already operating there."  Compl. ¶ 22.  Subsequent correspondence in the public record further shows that the District was aware of the light towers.  RJN, Exh. E at AD101728 (Jan. 5, 2023 email from Lucas Williams to District asking about inclusion of 16 generators in the

---

[5] The allegation further shows that Plaintiff has not suffered any concrete injury by the City's use of the lights.

District's evaluation of Permit Application No. 663096).

**B.    Plaintiff Fails to Link Any Alleged Injury to the City.**

"To satisfy the causality element for Article III standing, Plaintiffs must show that the injury is causally linked or 'fairly traceable' to the Agencies' alleged misconduct, and not the result of misconduct of some third party not before the court." *Bellon*, 732 F.3d at 1141 (quoting *Lujan*, 504 U.S. at 560-61).  "[W]here the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, the causal chain is too weak to support standing." *Id.* at 1142 (internal ellipses omitted).  "Although causation and redressability requirements are relaxed *when a plaintiff has established injury in fact* [for a procedural injury], the causation requirement remains implicated where the concern is that an injury caused by a third party is too tenuously connected to the acts of the defendant." *Mayorkas*, 5 F.4th at 1015 (italics added).  The claim "does not relieve Plaintiffs of their burden—even if relaxed—to demonstrate causation and redressability." *Id.* (citing *Bellon*, 732 F.3d at 1144).  "Plaintiffs must still establish that their specific, localized injuries are fairly traceable to the [challenged agency action]." *Bellon*, 732 F.3d at 1144.

**1.    Plaintiff Cannot Trace the Alleged Harm from Diesel Emissions to the City's Operation of the VTC.**

In *Bellon*, plaintiffs brought a citizen suit under the CAA alleging that defendant agencies failed to regulate GHG pollution, which caused their members to suffer recreational, economic, and health injuries. *Id.* at 1140.  Assuming without deciding injury in fact, the court found that the plaintiffs offered only "vague, conclusory statements that the Agencies' failure . . . contributes to [GHG] emissions" and ultimately to their injuries, amounting to an "attenuated chain of conjecture insufficient to support standing." *Id.* at 1142-43 (internal quotes omitted).

As discussed, here Plaintiff does not allege any specific, localized injuries; the Complaint does not link even Plaintiff's abstract claims of harm from diesel emissions—e.g., "Diesel PM is extremely harmful to humans." Compl. ¶ 28—to the City's operation of the VTC.  At most, Plaintiff asserts exposure: "Alliance members, are exposed to diesel pollution from the sixteen generators." Compl. ¶ 24.  The claim is both vague and conclusory and undermined by Plaintiff's further allegation that its members are "affected" only by "unlawful diesel pollution," Compl. ¶ 12, and that one light tower (or

any aggregation of horsepower below 50 bhp), is not unlawful.  Compl. ¶¶ 43, 45.  On Plaintiff's

theory, if the aggregated horsepower of the "16 generators" dropped below 50, as it did before

Plaintiff filed suit, they were not harmed by the "generators," and lacked standing to bring their

claims.  Plaintiff further concedes that numerous sources of diesel pollution operate in the Bayview,

the location of the VTC.  Compl. ¶¶ 1, 26 ("Bayview still hosts the largest percentage of industrial

sites").  But they do not allege that the City's operation of 5.1 horsepower, Tier 4 Final diesel engines

for nighttime lighting at the VTC contributes to their (abstract) harms.

### 2. Any Causal Chain For (Non)Permitting Injuries is Too Attenuated to Support Standing.

Insofar as Plaintiff seeks to allege harm by the City's operation of the 16 lights *without a*

*permit*, or the District's consideration of the City's PERP engine application, Plaintiff's theory of

standing relies on the actions of the District, a third-party beyond the City's control.  The undisputed

public record shows that the District takes the position that the 16 light towers are exempt from

District permitting requirements.  *See*, *e.g.*, RJN Exh. E at AD101724 (communication from

BAAQMD Director of Engineering, Pamela Leong to Plaintiff: "The Air District has evaluated

whether these generators required a permit . . . we have confirmed that the generators . . . met the

exemption in Regulation 2-1-114.2").  Plaintiff does not allege that a permitting process even exists

for small exempt engines, and the City could not operate equipment with a permit under the SIP absent

the District's creation and issuance of said permit.

Plaintiff's causal theory for its third cause of action, respecting the City's PERP engine permit

application, Application No. 663096, Compl. ¶ 55, also amounts to speculation.  Specifically, Plaintiff

contends that "*because* the City failed to provide complete information [information about the 16 light

towers] in its July 2022 application . . . the practices the Air District proposed to impose for the three

generators to reduce cancer risks were insufficient."  Compl. ¶ 56 (italics added).  The allegation

assumes that available control technologies or "practices" exist for small engines with a maximum

output rating of less than 50 horsepower, that the District has a process for implementing such

controls, and that the District would impose the controls as a condition to the City's permit for the two

PERP generators if it possessed unspecified "information" not already in its possession—assuming

also that the District grants the City's permit application. "The attenuation in this chain of reasoning, unsupported by well-pleaded facts," fails to establish Plaintiff's standing even "at the pleading stage." *Mayorkas*, 5 F.4th at 1015 (finding "the Supreme Court's precedent requires more than illogic or unadorned speculation before a court may draw the inference Plaintiff[] seeks").

Moreover, the undisputed public record and Plaintiff's allegations show that the District already knows about the "16 generators," *see* Compl. ¶ 22, and takes the position that additional "information" was not required for the City's application. *See*, *e.g.*, RJN Exh. E at AD101721 (communication from BAAQMD Director of Engineering, Pamela Leong to Plaintiff: "The 16 small generators did not need a permit, so they were not included in Application No. 663096. Even if they had needed a permit, they may have been included in a separate permit application rather than Application No. 663096.").

### C.    Plaintiff Cannot Establish the Redressability of Its Claims.

"To establish Article III redressability, the plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020). "[T]he 'fairly traceable' and 'redressability' components for standing overlap and are 'two facets of a single causation requirement.' . . . The two are distinct insofar as causality examines the connection between the alleged misconduct and injury, whereas redressability analyzes the connection between the alleged injury and requested judicial relief." *Bellon*, 732 F.3d at 1146 (citation omitted).

### 1.    Civil Penalties Carry No Deterrent Effect in This Case.

"[C]itizen suitors lack standing to seek civil penalties for violations that have abated by the time of suit." *Laidlaw*, 528 U.S. at 187 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106–07 (1998)). The Court in *Laidlaw* found that the plaintiff's interest in deterrence was sufficient to satisfy redressability for standing to seek civil penalties under the Clean Water Act: "for a plaintiff who is injured or faces the threat of future injury due to illegal conduct *ongoing at the time of suit,* a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress." *Id.* at 185–86 (italics added). But the Court also recognized that "there may be a point at which the deterrent effect of a claim for civil penalties becomes so insubstantial or so remote that it cannot

support citizen standing." *Id.* at 186. The case did not require the Court to "explore the outer limits of [this] principle" because there "the civil penalties sought . . . carried with them a deterrent effect that made it likely, as opposed to merely speculative, that the penalties would redress [the plaintiff's] injuries by abating current violations and preventing future ones." *Id.* at 187. In so holding the Court distinguished its decision in *Steel Co.*, wherein the plaintiff sought civil penalties under the citizen suit provision of the Emergency Planning and Community Right-To-Know Act of 1986 ("EPCRA"):

> We specifically noted in that case that there was no allegation in the complaint of any continuing or imminent violation, and that no basis for such an allegation appeared to exist. . . . In short, *Steel Co.* held that private plaintiffs, unlike the Federal Government, may not sue to assess penalties for wholly past violations . . . .

*Id.* Like the penalties authorized by the CAA, 42 U.S.C. § 7604(g), the penalties authorized by EPCRA are payable to the United States Treasury, *Steel Co*, 523 U.S. at 106. Accordingly, a private plaintiff seeking penalties for wholly past misconduct "seeks not remediation of its own injury . . . but vindication of the rule of law—the 'undifferentiated public interest' in faithful execution of [the Act]." *Steel Co*, 523 U.S. at 106 (quoting *Lujan*, 504 U.S. at 577); *see also WildEarth Guardians v. Pub. Serv. Co. of Colorado*, 690 F.3d 1174, 1185 (10th Cir. 2012) (finding both *Laidlaw* and *Steel Co.* applicable to jurisdictional analysis under the CAA); *Plotkin v. Ryan*, 239 F.3d 882, 885 (7th Cir. 2001) (finding *Laidlaw* "expressly acknowledged the continued validity of *Steel Co.*" re: citizen suitors' standing to seek civil penalties). As discussed, by December 22, 2022, only seven of the 16 generator light towers were in use at the VTC, *See* Macaraeg Decl. ¶ 8, for an aggregated engine horsepower of approximately 35, below the 50 bhp exemption threshold. Accordingly, any alleged violation respecting the "16 generators" had abated by the time Plaintiff filed suit. *See* Compl. ¶ 45. Indeed, because the City's intended use of the 16 lights was always temporary and the replacement solar lights are permanent, *See* Macaraeg Decl. ¶¶ 4 and 8, any asserted deterrence by penalties is speculative.

### 2.    No Order from the Court Could Remedy Plaintiff's Asserted Injury.

"There is no redressability, and thus no standing, where (as is the case here) any prospective benefits depend on an ... actor who retains broad and legitimate discretion the courts cannot presume

either to control or to predict." *Mayorkas*, 5 F.4th at 1016.  In *Mayorkas*, the plaintiff alleged that the Secretary of the Department of Homeland Security ("DHS") had violated NEPA by failing to consider the environmental impacts of immigration policy.  *Id.* at 1003-04.  According to plaintiff's theory of standing, changes to certain policy (that might flow from the sought NEPA analysis) would result in the removal of policy beneficiaries, "thereby reducing the U.S. population." *Id.* at 1016.  In addition to sheer speculation, the theory relied on changes to future removal proceedings, which the court found was in the sole discretion of DHS and beyond the court's remedial authority.  *Id.*  In *Nuclear Info.*, an agency not party to the case also had independent authority to regulate the transportation of nuclear material at issue, and the court found that any order against the defendant agency could not remedy the asserted injury for purposes of standing.  *Nuclear Info.*, 457 F.3d at 955; *see also Lujan*, 504 U.S. at 568 (holding there was no redressability because the funding agencies were not parties to the case and would not clearly be bound by any ordered change to regulations).

As discussed, insofar as Plaintiff seeks an order compelling the City "to obtain proper permits" or "to provide complete information to the air regulator," Compl. ¶ 14, the relief depends on actions within the "broad and legitimate discretion" of the District, who is not a party to this case, and thus beyond the reach any order issued herein.  *Mayorkas*, 5 F.4th at 1016.  Plaintiff's claims thus lack redressability.

## II.    Plaintiff Fails to State a Plausible Claim to Relief Under the Clean Air Act.

"The CAA places much of its enforcement burden on the states . . . Thus, a SIP must contain 'enforceable' emissions limitations and assurances that the *state* has sufficient authority and resources to carry out the SIP.  42 U.S.C. § 7410(a)(2)(A), (E)." *Cal. Dump Truck Owners*, 784 F.3d at 507 (cleaned up, original italics).  In particular, SIPs must provide that the "regional agency designated by the State . . . will have adequate personnel, funding, and authority . . . to carry out [the] plan."  42 U.S.C. § 7410(a)(2)(E).  It follows that "[p]arties may not, through a citizen suit, obtain modification of [a] SIP to conform with their own notion of proper environmental policy. . . . Citizen suits may only be brought to enforce specific measures, strategies, or commitments *designed* to ensure compliance with the NAAQS." *Bayview Hunters Point Cmty. Advocs.*, 366 F.3d at 703 (original italics, internal quotes and citations omitted).

Accordingly, a cause does not lie for violation of NAAQS, which are distinct from "an emission standard or limitation" under the CAA. *League to Save Lake Tahoe, Inc. v. Trounday*, 598 F.2d 1164, 1173 (9th Cir. 1979) (holding citizen suitors failed to state a claim to relief under the Act because they did not allege a violation of a specific emission limitation). Moreover, a SIP's "aims and goals . . . are not enforceable apart from the specific measures designed to achieve them." *Bayview Hunters Point Cmty. Advocs.*, 366 F.3d at 703 ("recogniz[ing] the well-established rule that courts may only enforce specific SIP strategies, and may not enforce a SIP's overall objectives or aspirational goals"). Emissions standards under the CAA "were intended as objective evidentiary standards . . . [against which] the determination of whether a government instrumentality or other 'person' is a polluter for purposes of section 304 was to be made." *Trounday*, 598 F.2d at 1173 (discussing legislative history, internal punctuation omitted). "SIP rules that involve purely subjective standards do not qualify, while those that announce concrete, objective permitting requirements do." *Coal. for Clean Air v. VWR Int'l, LLC*, 922 F. Supp. 2d 1089, 1102 (E.D. Cal. 2013) (internal quotes omitted); *see also* 76 Fed. Reg. 26609, 26612 (EPA's response to public comments on a proposed approval of revisions to the California SIP: "SIPs contain many aspects which are not federally enforceable emissions limitations.").

A.    **The Sixteen Light Towers are Exempt from District Permitting Requirements.**

The gravamen of Plaintiff's claims concerns the City's use of the 16 portable light towers without a permit. In its first claim to relief, Plaintiff alleges that the City violated SIP Regulation 2-1-301 by failing to obtain an Authority to Construct from the District before installing the 16 light towers at the VTC. Compl. ¶¶ 42-48. Plaintiff's second claim alleges that the City violated SIP Regulations 2-1-302 and 2-1-401 by simultaneously operating more than one light tower without a Permit to Operate. Compl. ¶¶ 49-52. Both claims fail because SIP Regulation 2-1-114.2.1 exempts the light towers from District permitting requirements.

When interpreting a SIP, courts "begin with . . . the plain meaning of the plan and stop there if the language is clear." *Nat. Res. Def. Council, Inc. v. S. Coast Air Quality Mgmt. Dist.*, 651 F.3d 1066, 1072 (9th Cir. 2011) (quoting *Safe Air For Everyone v. EPA*, 488 F.3d 1088, 1095 (9th Cir.2007)). "A regulation should be construed to give effect to the natural and plain meaning of its

words." *Bayview Hunters Point Cmty. Advocs.*, 366 F.3d at 698 (citation omitted).  A state agency's technical determinations are also properly afforded deference in a statutory scheme that gives states a principal role.  *See*, *e.g.*, *Trounday*, 598 F.2d at 1174 (finding that absent any statutory or regulatory mandate that an agency consider certain factors before issuing a permit, "discretion should properly repose in the responsible state officials to establish such ... methods and analysis as they deem appropriate.").  The EPA Environmental Appeals Board has noted: "When a petitioner seeks review of a permit based on issues that are fundamentally technical in nature, the Board assigns a particularly heavy burden to the petitioner. This demanding standard ensures that the locus of responsibility for important technical decisionmaking rests primarily with the permitting authority." *In Re Peabody W. Coal Co.*, 2005 WL 428833, at *9 (E.P.A. Feb. 18, 2005); *see also Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 490 (2004) (finding the EPA "acknowledges the need to accord appropriate deference" to state agencies' best available control technology determinations under the CAA, "consistent with a scheme that places primary responsibilities and authority with the States, backed by the Federal Government" (internal quotes omitted).

Regulation 2-1-114.2.1 states: "The following equipment is exempt from the requirements of Sections 2-1-301 and 302 . . . Internal combustion (IC) engines . . . with a maximum output rating less than or equal to 50 bhp."  RJN, Exh. F.  The light towers were each under 50 bhp, Compl. ¶ 43, and therefore subject to the exemption.  Plaintiff contends that the lights are not exempt because the added horsepower of all 16 engines exceeds 50 bhp.  Compl. ¶¶ 45, 51.  Plaintiff's claim that the lights, "together" must be considered a single 80 bhp source, or "related grouping," Compl. ¶¶ 44, 45, is refuted by the plain text of the SIP, its regulatory context, and the District's own determination on the issue.

To the extent aggregation applies, the SIP aggregates emissions, not horsepower.  Specifically, Regulation 2-1-114 excludes from exemption sources requiring a permit "pursuant to Section 2-1-319."  RJN F.  Regulation 2-1-319 incorporates an aggregate emissions threshold into the exemption under 2-1-114, excluding from exemption any source that emits more than 5 tons of any regulated pollutant per year.  *Id.*, SIP Reg. 2-1-319.1.  The regulation further excludes from exemption sources that exceed the numeric thresholds for specific toxins, nuisance sources, and hazardous substances.

*Id.*, SIP Reg. 2-1-319.2 (referencing SIP Regs. 2-1-316, 317, and 318).  Plaintiff does not allege that the 16 light towers exceeded these emissions thresholds, and it offers no authority for its claim that the relevant aggregate threshold is aggregate horsepower, as opposed to aggregate emissions.  Plaintiff's horsepower theory also fails to consider that engines of comparable horsepower may bear different emissions reductions, as reflected in the EPA's engine tiers.  Finally, the District confirmed that the 16 light towers "met the exemption in Regulation 2-1-114.2"  RJN Exh. E at AD101724, and "did not constitute a 'related grouping' because they could not have been grouped together to fulfill their function of distributing light adequately around the 312,000 square foot site for safety and security." *Id.* at AD101722-23. The District further found that, contrary to Plaintiff's contention, "[t]he definition of facility [in the SIP] is irrelevant." *Id.*  Insofar as Plaintiff seeks to force the District to begin regulating small, exempt engines, the CAA does not contemplate suits by citizen suitors advancing their "own notion of proper environmental policy." *Bayview Hunters Point Cmty. Advocs.*, 366 F.3d at 703.

## B.    The Definition of a Complete Application is Not an Enforceable Emission Standard.

Plaintiff's third claim to relief seeks to enforce SIP Regulation 2-1-202, which provides the following definition of a complete application: "[a]n application that contains all of the information required under Regulation 2-1-402."  Regulation 2-1-402.1 provides that "Every application of an authority to construct or a permit to operate shall be submitted to the [District] on the forms specified, and shall contain . . . [s]ufficient information for the [District] to determine the emissions *from the sources that are the subject of the application* . . . ."  RJN Exh. F (italics added); Compl. ¶ 54.  The sources that are the subject of the City's PERP application are the two PERP engines, not the 16 light towers.  Moreover, a definition calling for "sufficient information" in an administrative scheme goes to the overall objectives of the SIP and is an aspirational, subjective standard that cannot be enforced through a citizen suit. *Bayview Hunters Point Cmty. Advocs.*, 366 F.3d at 703; *VWR Int'l*, 922 F. Supp. 2d at 1102.  Finally, the District has confirmed that information about the 16 light towers did not need to be included in the City's PERP application.  RJN Exh. E at AD101721.  The District's opinion on the technical requirements of its permitting process is properly afforded deference. *Trounday*, 598

F.2d at 1174.

### C.    Circumvention is Not an Enforceable Emission Standard.

Plaintiff's fourth claim to relief seeks to enforce SIP Regulation 1-104, which states (as a "general provision" to the District's rules, SIP Reg. 1-101): "Circumvention Not Permitted: A person shall not undertake or authorize any practice intended or designed to evade or circumvent District Rules or Regulations." *See* Compl. ¶ 60.  The provision goes to the overall objectives of the SIP and is an aspirational, subjective standard that cannot be enforced through a citizen suit. *Bayview Hunters Point Cmty. Advocs.*, 366 F.3d at 703; *VWR Int'l*, 922 F. Supp. 2d at 1102.  The District also confirmed that there is no circumvention when equipment (the lights) are used as intended.  RJN Exh. E at AD101724.

### III.    Supplementation of the Complaint Would be Futile.

Plaintiff's motion for leave to supplement the Complaint should be denied as the new allegations fail to cure the standing deficiencies of the Complaint and, on their own, present no new independent basis for standing.  Supplementation is thus futile, "which alone can justify the denial" of Plaintiff's motion. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

Plaintiff's proposed allegations rely exclusively on the District's Notice to Comply to the City on May 12, 2023 ("NTC").  Macaraeg Decl. ¶15; Supp. Compl. ¶ 27.  Plaintiff alleges that as a result of the NTC, its members "reasonably fear that the City's pattern and practice of installing and operating diesel generators at the [VTC] will . . . (a) expos[e] them to additional diesel pollution, [and] (b) "depriv[e] them of their right to participate in a public permitting process."  Supp. Compl. ¶ 29.  The allegation is conclusory, refuted by undisputed facts, including the face of the NTC, and shows that Plaintiff still lacks standing to bring this action.  Specifically, Plaintiff still fails to show that its members have suffered an injury in fact that is either traceable to the City's operation of the VTC or can be redressed by this Court. *See Laidlaw*, 528 U.S. at 180–81 (2000).  An asserted "fear of speculative future injury" fails to meet this standard, *Munns v. Kerry*, 782 F.3d 402, 411 (9th Cir. 2015), and rather amounts to "a repackaged version of [Plaintiff's] first failed theory of standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)).

First, the NTC, by definition and on its face, refutes Plaintiff's "fear of additional exposure to pollution." An NTC, is a notice to correct a "minor violation" of an applicable requirement, rule, permit condition, or request for information. RJN, Exh. G, BAAQMD Reg. 1-2-205. The minor violation that warrants an NTC (as opposed to a Notice of Violation) must not endanger the environment or human health, safety, or welfare; result in an increase in air emissions beyond a de minimus amount; contribute to exceedance of any State or national air quality standard; or impede the Air District's ability to determine compliance with any other rules or regulations. *Id.,* BAAQMD Reg. 1-2-204. Further, to issue an NTC, the Air District must confirm that the minor violation: does not result in failure to comply with applicable emissions standards; was not made knowingly, willfully, or intentionally; does not result in economic or competitive advantage for the recipient; is not a chronic violation; was not made by a recalcitrant violator; and does not result in a nuisance. *Id.,* BAAQMD Reg. 1-2-301. An NTC is thus not appropriate for any violation that would cause a concrete injury to any person as it does not involve exposure to increased pollutants or a threat to human health or the environment, nor is an NTC warranted for intentional or repeat violations, or for polluters with a "pattern or practice" of violation. In fact, the City did not operate the two PERP engines identified in the NTC, Macaraeg Decl. ¶ 11, and the notice does not state otherwise.

Rather, the NTC shows that the City corrected the minor violation within three days, and the District confirmed compliance with the regulation at issue on May 15, 2023. Because the alleged violation has been cured, Plaintiff lacks standing for the injunctive relief and civil penalties that it seeks. *Laidlaw*, 528 U.S. at 184-187. Indeed, the provisions for an NTC prohibit the District from taking "any other enforcement action . . . to enforce the minor violation . . . if the person or facility is in compliance . . . ." RJN Exh. G, BAAQMD Reg. 1-2-301. The provisions for an NTC are also set forth in Rule 2 of BAAQMD Regulation 1, which is not part of the EPA-approved California SIP that can form the basis of a citizen suit under the CAA. As stated with the Complaint, Plaintiff cannot use a citizen suit to advance its "own notion of proper environmental policy." *Bayview Hunters Point Cmty. Advocs.*, 366 F.3d at 703. The District has already taken its enforcement action via the NTC. If Plaintiff disputes the propriety of that action, its grievance is not properly with the City.

Insofar as Plaintiff alleges harm by denial of a right to participate in the permitting process,

Supp. Compl. ¶ 29, again, that process is controlled by the District, and the not the City.  As the District is not a party to this action, this Court cannot redress Plaintiff's stated injury.  *See Lujan*, 504 U.S. at 568; *Mayorkas*, 5 F.4th at 1016; *Nuclear Info.*, 457 F.3d at 955.

**IV.    If Plaintiff's Action is Not Dismissed, the District Must be Joined as a Required Party.**

If the Court determines that Plaintiff's action should proceed, it must order the joinder of the District as a required party.  Fed. R. Civ. P. 19(a)(2); 12(h)(2)(B) (allowing a motion for joinder through Rule 12(c)); *see also Kelley v. AW Distrib., Inc*., 2022 WL 1659119, at *2 (N.D. Cal. May 25, 2022) (finding a motion to dismiss under Rule 12(b)(7) for failure to join a party under Rule 19 may be raised "in any pleading allowed under Rule 7(a), by a Rule 12(c) motion, or at trial").

Rule 19 is concerned with "consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *E.E.O.C. v. Peabody W. Coal Co*., 400 F.3d 774, 780 (9th Cir. 2005).  In actions seeking prospective relief, joinder binds a required party under Rule 19(a)(1) by res judicata to enable complete relief. *Id.* (finding that joinder will "preclude the [party] from bringing a collateral challenge to the judgment").

The District is a required party to this action because it exercises jurisdiction over the permitting process at issue in Plaintiff's action.  As discussed, Plaintiff's claims, when directed against the City, lack redressability because the District exercises independent discretion over the non-issuance (non-existence) of a permit for small equipment exempt from permitting requirements under SIP Reg. 2-1 114.2, and the District is not a party to this action.  Similarly, this Court cannot accord complete relief among existing parties absent the District because the City does not control the District's permitting protocols at issue in Plaintiff's first two causes of action, or the required contents of a permit application in the third cause of action.  Fed. R. Civ. P. 19(a)(1)(A).

///

///

///

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, the City respectfully asks the Court to dismiss Plaintiff's Complaint without leave to amend and enter judgment on the pleadings for the City under Federal Rule of Civil Procedure 12(c).

Dated:  October 16, 2023

DAVID CHIU
City Attorney
ROBB W. KAPLA
KATHY J. SHIN
Deputy City Attorneys


By:/s/ Kathy J. Shin
KATHY J. SHIN

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO