LUCAS WILLIAMS (State Bar No. 264518)
JACOB JANZEN (State Bar No. 313474)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, California 94117
Telephone:    (415) 913-7800
lwilliams@lexlawgroup.com
jjanzen@lexlawgroup.com

CAROLINE FARRELL (State Bar No. 202871)
ENVIRONMENTAL LAW AND JUSTICE CLINIC
GOLDEN GATE UNIVERSITY SCHOOL OF LAW
536 Mission Street
San Francisco, California 94105
Telephone:    (415) 442-6581
cfarrell@ggu.edu

Attorneys for Plaintiff
CANDLESTICK HEIGHTS COMMUNITY ALLIANCE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CANDLESTICK HEIGHTS COMMUNITY ALLIANCE, an unincorporated association,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation,<br><br>Defendant. | Case No. 3:23-cv-00082-SK<br>Assigned to Honorable Judge Sallie Kim<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT THE COMPLAINT**<br><br>Date: November 20, 2023<br>Time: 9:30 a.m.<br>Place: Zoom videoconference |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

I.   Defendant installed and operated diesel generators at the facility without first applying for air quality permits. ....................................................................................................... 3

II.  The Clean Air Act's key permitting requirements. ......................................................... 4

III. The relevant procedural history. .................................................................................... 5

IV.  The legal standard for a motion for judgment on the pleadings and a motion to supplement the complaint under Rule 15(d). ....................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.   Defendant's motion for judgment on the pleadings should be denied because Plaintiff's members have constitutional standing and Plaintiff states a claim for relief under the Clean Air Act.. ............ 7

   A.  Plaintiff has constitutional standing because its members were exposed to hazardous air pollutants from Defendant's diesel generators. ....................................................... 7

      (1) Plaintiff's members have suffered injuries in fact because they are exposed to hazardous air pollutants emitted from diesel generators at the facility. ........................................ 8

      (2) Plaintiff's members have suffered actual and imminent injuries because they have been exposed to hazardous air pollutants from Defendant's diesel generators. ....................... 10

      (3) Plaintiff's member's injuries are fairly traceable to the facility's emissions of hazardous air pollutants. .............................................................................................. 11

      (4) Plaintiff's complaint plausibly alleges injuries that are redressable by an order imposing civil penalties or enjoining Defendant's use of diesel generators without a permit. ............ 12

         (a)  Civil penalties will redress Plaintiff's injuries. ............................................... 12

         (b)  An order enjoining Defendant from using diesel generators without first applying for air quality permits will redress Plaintiff's injuries. ...................................... 14

II.  Plaintiff's complaint states a claim for relief under the Clean Air Act. ........................... 15

   A.  Under the plain language of the Clean Air Act and the SIP, the facility's diesel generators are not exempt from the SIP's permitting requirements. ........................................ 16

   B.  The District's engineer's emails interpreting the SIP are not entitled to deference. .............. 18

   C.  The SIP's permitting program is enforceable in this citizen suit. ............................... 21

III. Plaintiff's motion to supplement the complaint under Rule 15(d) should be granted because it properly alleges post-complaint violations of the Clean Air Act. ................................... 22

IV.  The District cannot be joined as a party in this action under Ninth Circuit precedent...................... 23

V.  The extrinsic testimony and evidence submitted with Defendant's motion for judgment on the pleadings presents disputed facts that should be resolved at the summary judgment and/or trial stage. ................................................................................................................................................ 24

VI.  The Court should grant leave to amend the complaint if the Court holds that the complaint is deficient. ................................................................................................................................................ 24

1

## TABLE OF AUTHORITIES

2

### <u>CASES</u>

3    *Alabama Power Co. v. Costle,*

4    636 F.2d 323 (D.C. Cir. 1979).................................................................................... 16

5    *Alaska Dep't of Envtl. Conservation v. E.P.A.,*

     540 U.S. 461 (2004) ..................................................................................................... 20

6    *Ass'n of Irritated Residents v. Fred Schakel Dairy,*

7    460 F. Supp. 2d 1185 (E.D. Cal. 2006) ...................................................................... 15

8    *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.,*

9     299 F.3d 1007 (9th Cir. 2002).............................................................................. passim

10   *Cafasso v. Gen. Dynamics C4 Sys., Inc.,*

     637 F.3d 1047 (9th Cir. 2011)........................................................................................ 6

11   *Cent. Delta Water Agency v. United States,*

12   306 F.3d 938 (9th Cir. 2002)......................................................................................... 9

13   *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*

14   467 U.S. 837 (1984) ..................................................................................................... 16

15   *Coal. for Clean Air v. VWR Int'l, LLC,*

     922 F. Supp. 2d 1089 (E.D. Cal. 2013) ...................................................................... 21

16   *Communities For A Better Env't v. Cenco Ref. Co.,*

17   180 F. Supp. 2d 1062 (C.D. Cal. 2001) .......................................................... 10, 11, 21

18   *Covington v. Jefferson Cnty.,*

19   358 F.3d 626 (9th Cir. 2004) ................................................................................... 9, 13

20   *DCD Programs, Ltd. v. Leighton,*

     833 F.2d 183 (9th Cir. 1987) ......................................................................................... 7

21   *Ecological Rights Found. v. Pac. Lumber Co.,*

22   230 F.3d 1141 (9th Cir. 2000) ................................................................................. 8, 11

23   *Eminence Cap., LLC v. Aspeon, Inc.,*

24    316 F.3d 1048 (9th Cir. 2003) ................................................................................ 7, 24

25   *Env't Democracy Project v. Green Sage Mgmt., LLC,*

     No. 22-CV-03970-JST, 2022 WL 4596616 (N.D. Cal. Aug. 23, 2022) ....................... 4

26   *Fleming v. Pickard,*

27   581 F.3d 922 (9th Cir. 2009) ........................................................................................ 6

28

*Foman v. Davis*,
   371 U.S. 178, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962)............................................................... 6

*Friends of the Earth v. U.S. Navy*,
   841 F.2d 927 (9th Cir. 1988) ............................................................................................... 15

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ....................................................................................................... 8, 13

*General Motors Corp. v. United States*,
   496 U.S. 530 (1990) .............................................................................................................. 4

*Gonzales v. Oregon*,
   546 U.S. 243 (2006) ............................................................................................................ 19

*Hal Roach Studios v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1990) ......................................................................................... 6, 24

*Hall v. Norton*,
   266 F.3d 969 (9th Cir. 2001) ........................................................................................... 8, 11

*Hunt v. Wash. State Apple Adver. Comm'n*,
   432 U.S. 333 (1977) .............................................................................................................. 8

*Keith v. Volpe*,
   858 F.2d 467 (9th Cir. 1988) ................................................................................................. 6

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................................................... 6

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ............................................................................................. 24

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................................... passim

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .............................................................................................................. 8

*Nat. Res. Def. Council v. Sw. Marine, Inc.*,
   236 F.3d 985 (9th Cir. 2000) ............................................................................................... 11

*Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n.*,
   457F.3d 941 (9th Cir. 2006), ............................................................................................... 10

*Nw. Env't Def. Ctr. v. Owens Corning Corp.*,
   434 F. Supp. 2d 957 (D. Or. 2006) ...................................................................................... 12

*Paralyzed Veterans of America v. McPherson*,
    No. C 06–4670 SBA, 2008 WL 4183981 (N.D. Cal. Sept. 9, 2008)........................................ 6

*Price v. Stevedoring Servs. of Am., Inc.*,
    697 F.3d 820 (9th Cir. 2012) ....................................................................................... 20

*Roberts v Corrothers*,
    812 F.2d 1173 (9th Cir. 1987) ........................................................................................ 6

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ........................................................................................ 6

*San Francisco Baykeeper v. Cargill Salt Div.*,
    481 F.3d 700 (9th Cir. 2007) ......................................................................................... 5

*San Francisco Baykeeper v. Tosco Corp.*,
    309 F.3d 1153 (9th Cir. 2002) ...................................................................................... 13

*Savage v. Glendale Union High Sch.*,
    343 F.3d 1036 (9th Cir. 2003) ................................................................................. 7, 24

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ...................................................................................................... 7

*Sierra Club v. Portland Gen. Elec. Co.*,
    663 F. Supp. 2d 983 (D. Or. 2009) ............................................................................... 23

*Sierra Club v. Trump*,
    929 F.3d 670 (9th Cir. 2019) ....................................................................................... 20

*Simon v. Eastern Ky. Welfare Rights Organization*,
    426 U.S. 26 (1976) ........................................................................................................ 8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .................................................................................................... 10

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ...................................................................................................... 13

*United States v. Ben's Truck & Equip., Inc.*,
    No. CIV. S-84-1672 MLS, 1986 WL 15402 (E.D. Cal. May 12, 1986) .............................. 22

*United States v. Trident Seafoods Corp.*,
    92 F.3d 855 (9th Cir. 1996) ......................................................................................... 22

*Washington Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) ...................................................................................... 12

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,

    5 F.4th 997 (9th Cir.), cert. denied, 142 S. Ct. 713 (2021) ................................................ 15

*WildEarth Guardians v. Pub. Serv. Co. of Colorado*,

    690 F.3d 1174 (10th Cir. 2012) ........................................................................................... 14

## **STATUTES**

42 U.S.C. § 7401(b)(1) ............................................................................................................ 4

42 U.S.C. § 7412 ..................................................................................................................... 4

42 U.S.C. § 7412(a)(1) .......................................................................................................... 16

42 U.S.C. § 7412(a)(2) .......................................................................................................... 16

42 U.S.C. § 7604(a) ................................................................................................................ 5

42 U.S.C. § 7604(a)(1) ................................................................................................. 4, 5, 13

Fed. R. Civ. Pro. 12(b)(1) ...................................................................................................... 6

Fed. R. Civ. Proc. 12(d) ....................................................................................................... 24

Fed. R. Civ. Pro. 15(d) ......................................................................................................... 22

Fed. R. Civ. Pro. 56 ................................................................................................................ 7

Fed. R. Civ. Pro. 56(a) ......................................................................................................... 24

## **REGULATIONS**

40 C.F.R. § 52.220(c)(502)(i)(A)(1) ...................................................................................... 4

40 C.F.R. § 63.6590(c) ......................................................................................................... 17

40 C.F.R. § 70.2 .................................................................................................................... 17

SIP Reg. 1-101 ...................................................................................................................... 21

SIP Reg. 2-1 .......................................................................................................................... 23

SIP Reg. 2-1-114 ............................................................................................................ 16, 17

SIP Reg. 2-1-213 ................................................................................................................... 16

SIP Reg. 2-1-221 ............................................................................................................ 16, 19

SIP Reg. 2-1-301 ............................................................................................................... 4, 20

SIP Reg. 2-1-302 ............................................................................................................... 4, 20

SIP Reg. 2-1-316 ............................................................................................................... 5, 18

SIP Reg. 2-1-319.2 ................................................................................................................ 18

SIP Reg. 2-1-402 ............................................................................................................ 21, 22

**INTRODUCTION**

This Clean Air Act enforcement action seeks to hold Defendant City and County of San Francisco accountable for emitting hazardous air pollutants into a community of color that is already overexposed to air pollution.

Defendant's motion for judgment on the pleadings should be denied.  The Clean Air Act, with very limited exceptions, requires facilities to obtain permits before installing and operating equipment that emits hazardous air pollutants.  Here, Defendant admits that it operated numerous diesel generators for over a year, including after this case was filed, without first obtaining an air quality permit.  These diesel generators emitted significant amounts of diesel particulate matter, which is highly toxic and carcinogenic, into the surrounding neighborhood where Plaintiff's members live.  Defendant further admits that it installed additional unpermitted generators at the facility without first obtaining air quality permits after the complaint was filed.  Plaintiff's members have been injured by Defendant's conduct and have stated a claim for relief under the Clean Air Act's citizen suit provision.

Plaintiff's members have constitutional standing to address Defendant's Clean Air Act violations because they have been exposed to hazardous air pollutants, which injures their physical health and well-being, the use and enjoyment of their homes, and their recreational interests in the only accessible greenspace in the neighborhood—the Candlestick Point State Recreation Area (the state park).  These injuries are fairly traceable to Defendant's operation of diesel generators without first seeking an air quality permit.  The injuries are redressable by an order enjoining Defendant's operation of diesel generators without permits and imposing civil penalties to deter future violations.

The complaint states a claim for relief under the Clean Air Act.  The plain language of the Clean Air Act and the federal regulations implementing the statute (referred to as the State Implementation Plan or SIP) establish that the facility is a source of air contaminants that is subject to Clean Air Act permitting requirements.  Defendant attempts to avoid permitting requirements by treating the diesel generators as individual sources of pollution—which Defendant contends are exempt from air quality permitting as each having an output of less than 50 brake horsepower (horsepower).  Defendant's argument is contrary to the plain meaning of the statute and regulations.  The plain language of the Clean Air Act and State Implementation Plan mandate that individual sources of hazardous air pollutants

are analyzed in the aggregate, and that is how the United States Supreme Court has interpreted the statute and regulations.  Defendant's diesel generators are thus subject to permitting requirements because they cumulatively exceed the State Implementation Plan's thresholds that trigger permitting—both in terms of aggregate horsepower and actual emissions of diesel particulate matter.

Furthermore, the adoption of Defendant's argument that the diesel generators should be evaluated as separate sources of hazardous air pollutants would turn the Clean Air Act on its head. Defendant's interpretation would allow facilities to use significant numbers of relatively small sources of pollution that individually fall under permitting thresholds, but which produce the same amount of (if not more) air pollution than larger, non-exempt equipment.  As the regional air quality regulator has acknowledged, Defendant's interpretation of the State Implementation Plan would allow Defendant to operate as many as 1,000 diesel generators at the facility so long as the individual generators are each less than 50 horsepower.  To avoid this absurd result, the Court should apply the plain language of the State Implementation Plan in accordance with the United States Supreme Court's decisions mandating plant-wide review of sources of pollution.  Defendant's motion should be denied.

Plaintiff's motion for leave to supplement the complaint under Rule 15(d) should be granted because it properly alleges post-complaint Clean Air Act violations.  Rule 15(d) authorizes supplemental complaints to allege claims regarding events that occurred after the complaint was filed.  Defendant does not contend it would suffer any prejudice from the supplemental complaint, which is the most important consideration on a Rule 15(d) motion.  The supplemental complaint is not "futile" because, at the very least, it establishes Plaintiff's standing to pursue its claims against Defendant's ongoing violations of the Clean Air Act.  In addition, granting leave to file the supplemental complaint will further judicial economy by allowing the Court to fully adjudicate the alleged violations in this action.  Plaintiff's Rule 15(d) motion should be granted.

# BACKGROUND

## I.    Defendant installed and operated diesel generators at the facility without first applying for air quality permits.

Defendant admits that it operated sixteen diesel generators at the facility for a year without seeking air quality permits.  ECF No. 45 at ¶¶ 5-9.  The facility is a "Vehicle Triage Center" for individuals living in their vehicles, located in the Candlestick Point State Recreation Area in the Bayview Hunters Point neighborhood.  ECF No. 1 ¶ 1.  Many of the diesel generators were placed directly adjacent to the vehicles of the facility's residents—*i.e.* where residents were living and sleeping. *See* ECF No. 45 ¶ 6 Exh. B and Williams Decl. ¶ 5 Exh. D (both showing the location of generators near vehicles).  The generators have emitted significant amounts of hazardous air pollutants into the surrounding neighborhood, where Plaintiff's members live.  Moore Decl. ¶ 1; Howard Decl. ¶ 1; Simon Decl. ¶ 1.  Plaintiff's expert has testified that the diesel particulate matter emissions from the facility exceeded the SIP's health risk limit, which triggers permitting, by over 383 times.  Williams Decl. ¶ 3 Exh. B (Kapahi Expert Report at ¶ 9).  Plaintiff's members were forced to breathe these dangerous pollutants.  Moore Decl. ¶¶ 2; Howard Decl. ¶ 2; Simon Decl. ¶ 4.

Defendant opted to use diesel generators instead of clean energy sources because it did not properly plan for the major vehicle encampment where the diesel engines were operated.  ECF No. 1 ¶ 3.  Specifically, although Defendant had been planning the facility for nearly a year, and had represented that the site had access to the electrical grid, it did not.  *Id.*  This left the facility's residents without light. *Id.* ¶ 23.  Defendant decided to use at least sixteen diesel generators to provide light without informing the public, the United States Environmental Protection Agency, or the regional air regulator, *i.e.*, the Bay Area Air Quality Management District (the District).  *Id.* ¶¶ 20-21.

After receiving Plaintiff's 60-day notice of violation of the Clean Air Act, Defendant removed some, but not all, of the diesel generators from the facility.  Williams Decl. ¶ 4 Exh. C.  Defendant removed nine of the sixteen generators and replaced them with solar light powers—which it should have done before the facility began operation—shortly after Plaintiff filed the complaint.  ECF No. 45 at ¶ 8; Williams Decl. ¶ 4 Exh. C.  Defendant stated that it was removing the generators to "fall below the cumulative 50HP permit requirement" which is a reference to the State Implementation Plan's

1  exemption for individual generators with an output of less than 50 horsepower.  Williams Decl. ¶ 4 Exh.
2  C.

3      Defendant intends to operate additional, much larger, stationary diesel engines to provide power
4  to the facility for at least the next two years.  Motion at 5:10-17 [ECF No. 43].  The District's staff
5  expressed concern about Defendant's decision to use diesel generators at the facility, lamenting:
6  "energize the RV village w/ deadly diesel PM.  What is SF doing?"  Williams Decl. ¶ 6 Exh. E.
7  Defendant misleadingly refers to these stationary 215 and 170.8 horsepower diesel generators as
8  "PERP" (Portable Equipment Registration Program) generators.  Motion at 5:9.  The PERP program,
9  implemented by the California Air Resources Board, applies to generators used for less than 90 days.
10 *See Env't Democracy Project v. Green Sage Mgmt., LLC*, No. 22-CV-03970-JST, 2022 WL 4596616, at
11 *2 (N.D. Cal. Aug. 23, 2022).  Here, Defendant intends to operate large diesel engines for several years,
12 so they are stationary sources.  Defendant's large diesel generators therefore do not qualify for the PERP
13 program.  *See id.*

14 **II.    The Clean Air Act's key permitting requirements.**

15     This case involves the Clean Air Act's air quality permitting provisions.  The purpose of the
16 statute is "to protect and enhance the quality of the Nation's air resources so as to promote the public
17 health and welfare."  42 U.S.C. § 7401(b)(1).  To this end, the Clean Air Act regulates hazardous air
18 pollutants—highly toxic industrial byproducts like acrolein, 1,3-butadiene, and benzene—that are
19 contained in diesel engine exhaust and can cause cancer, developmental harm, and other serious health
20 effects.  42 U.S.C. § 7412.

21     Under the Clean Air Act's cooperative federalism framework, *General Motors Corp. v. United*
22 *States*, 496 U.S. 530, 532 (1990), the District is responsible for implementing an EPA-approved State
23 Implementation Plan (the SIP) that sets forth, among other things, preconstruction permitting
24 requirements to protect air quality and public health.  *See* 40 C.F.R. § 52.220(c)(502)(i)(A)(1); 42
25 U.S.C. § 7604(a)(1).  Under the SIP, any person who operates equipment that emits air contaminants
26 must "first secure written authorization" from the District "in the form of an authority to construct" and
27 "a permit to operate." SIP Reg. 2-1-301 & 2-1-302 (ECF No. 44 at Exh. F).  The SIP contains health risk
28 limits for hazardous air pollutants, which trigger permitting requirements when the limits are exceeded.

1  SIP Reg. 2-1-316 at Table 2-5-1 (Williams Decl. ¶ 3, Exh. F).  The trigger level for diesel particulate

2  matter is extremely low at 0.26 pounds per year.  *Id.* at 2-5-15.

3        Citizens are authorized to file suit to enforce the Clean Air Act's permitting requirements,

4  including those requirements set forth in the SIP.  42 U.S.C. § 7604(a).  The purpose of the citizen suit

5  provision "is to permit citizens to enforce [federal environmental statutes] when the responsible agencies

6  fail or refuse to do so."  *San Francisco Baykeeper v. Cargill Salt Div.*, 481 F.3d 700, 706 (9th Cir.

7  2007).  When a state agency charged with administering a permit program determines that no permit is

8  required for an activity, a citizen may still bring suit against a private party for the unpermitted

9  activity—any finding to the contrary "would frustrate the purposes" of the statute's "empowerment of

10  [a] citizen suit."  *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007,

11  1011-1012 (9th Cir. 2002).  Unlike the Clean Water Act and other federal environmental laws, the Clean

12  Air Act citizen suit provision authorizes citizen enforcement actions for wholly past violations.  *See* 42

13  U.S.C. § 7604(a)(1).

14  **III.    The relevant procedural history.**

15        Plaintiff served Defendant with a 60-day notice of violation of the Clean Air Act in October

16  2022 concerning Defendant's failure to obtain air quality permits before installing and operating at least

17  sixteen 5.1 horsepower diesel engines at the facility.  ECF No. 1, Exh. A.  Plaintiff filed the complaint

18  on January 6, 2023.  ECF No. 1.  In June 2023, Plaintiff learned that Defendant had installed and/or

19  operated two large diesel generators at the facility without obtaining permits.  ECF No. 40-1 at ¶ 4.

20  Plaintiff promptly served Defendant with a 60-day notice of violation of the Clean Air Act.  *Id.* ¶ 5.

21  Plaintiff filed its motion to supplement the complaint under Rule 15(d) in September 2023 once the 60-

22  day notice period had expired.  ECF No. 40.

23        Fact discovery has closed.  ECF No. 22 at 2.  Plaintiff took the depositions of the District's

24  permitting engineer, Pamela Leong, and Defendant's person most qualified, Marc Macaraeg.  Williams

25  Decl. ¶ 2 Exh. A.  Defendant did not take any depositions of Plaintiff or its members.  *Id.*

26        On October 6, 2023, Plaintiff served Defendant with the expert report of Ray Kapahi regarding

27  the amount of the facility's diesel particulate matter emissions.  Williams Decl. ¶ 3.  Defendant has not

28  submitted expert testimony.  *Id.*  Expert discovery closes on November 24, 2023.  ECF No. 22 at 2.

**IV.    The legal standard for a motion for judgment on the pleadings and a motion to supplement the complaint under Rule 15(d).**

The same legal standard applies to a motion for judgment on the pleadings as to a motion to dismiss for failure to state a claim. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). The court must accept as true all material facts alleged in the pleadings and draw all reasonable inferences in favor of the nonmoving party. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). The court may consider materials attached to or incorporated by reference in the pleadings. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Under Rule 12(b)(1), where a jurisdictional issue is separable from the merits of a case, Defendant may lodge a factual attack on the pleadings for lack of subject-matter jurisdiction that is based on extrinsic evidence. *See* Fed. R. Civ. Pro. 12(b)(1); *Roberts v Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). The court, in determining whether it has jurisdiction over Plaintiff's claims, may consider that extrinsic evidence, and if disputed, may weigh the evidence and determine facts. *Id.* However, "jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (quoting *Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir. 1983).

Under Rule 15(d), a party may supplement a pleading to allege relevant facts that occurred after the original pleading was filed. Fed. R. Civ. Pro. 15(d); *Keith v. Volpe*, 858 F.2d 467, 473-474 (9th Cir. 1988). Because supplementation under Rule 15(d) promotes judicial economy and convenience, it is generally favored. *Id.* at 473. "The legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as for amending one under 15(a)." *Paralyzed Veterans of America v. McPherson,* No. C 06–4670 SBA, 2008 WL 4183981, at *26 (N.D. Cal. Sept. 9, 2008). Courts evaluating the propriety of a motion for leave to amend (and therefore a motion to supplement) weigh the following factors: (1) undue delay, (2) the movant's bad faith, (3) failure of previous amendments, (4) undue prejudice to the nonmoving party, and (5) futility of the amendment. *Foman v. Davis*, 371

U.S. 178 (1962).  Among these *Foman* factors, "the consideration of prejudice to the opposing party []

carries the greatest weight," so much so that "[a]bsent prejudice, or a strong showing of any of the

remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to

amend."  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in

original).  As the party opposing supplementation, Defendant bears the burden of showing prejudice.

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

## ARGUMENT

I.    **Defendant's motion for judgment on the pleadings should be denied because Plaintiff's members have constitutional standing and Plaintiff states a claim for relief under the Clean Air Act.**

Defendant's motion for judgment on the pleadings, which is largely based on disputed facts

outside of the pleadings, fails to establish any defect in Plaintiff's complaint.  Plaintiff's members have

standing and Plaintiff has stated a claim for relief under the Clean Air Act.  Because Defendant has

lodged a Rule 12(b)(1) factual challenge to jurisdiction, Plaintiff is required to submit the testimony of

its members in response.  *See Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n. 2 (9th Cir.

2003); *see generally* Moore Decl. ¶¶ 1-14; Howard Decl. ¶¶ 1-4; Simon Decl. ¶¶ 1-8.  If the Court

decides to treat Defendant's motion for judgment on the pleadings as a Rule 56 motion for summary

judgment, the motion should be denied because it relies on disputed material facts.  *See* Fed. R. Civ. Pro.

56.

### A.    **Plaintiff has constitutional standing because its members were exposed to hazardous air pollutants from Defendant's diesel generators.**

Plaintiff's members have standing to pursue this Clean Air Act enforcement action because they

were forced to breathe hazardous air contaminants from Defendant's diesel generators.  Federal courts

can only adjudicate "cases" and "controversies," and thus a plaintiff must show "the irreducible

constitutional minimum of standing."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  There are

three requirements for a party to have standing to bring a lawsuit in federal court.  First, plaintiff must

have suffered an "injury in fact."  *Id.*  An injury in fact is an invasion of a legally protectable interest

that is both "concrete and particularized," as well as "actual or imminent, not conjectural or

hypothetical."  *Id.* (citing *Sierra Club v. Morton*, 405 U.S. 727, 740–41 n. 16 (1972)).  Second, there

must be a "causal connection between the injury and the conduct complained of." *Defs. of Wildlife*, 504 U.S. at 560.  In other words, the injury must be "fairly traceable" to defendant's actions.  *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976).  Third, it must be "likely" that the injury complained of can be redressed by a favorable court decision.  *Defs. of Wildlife*, 504 U.S. at 561.

At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion for judgment on the pleadings the court must "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990); *Defs. of Wildlife*, 504 U.S. at 561 (1992).  Plaintiff's members have provided declarations in response to Defendant's factual attack on the pleadings, which demonstrate their injuries from Defendant's operation of diesel generators at the facility.  *See generally* Moore Decl. ¶¶ 1-14; Howard Decl. ¶¶ 1-4; Simon Decl. ¶¶ 1-8.

> (1)    Plaintiff's members have suffered injuries in fact because they are exposed to hazardous air pollutants emitted from diesel generators at the facility.

Plaintiff's members have been exposed to hazardous air pollutants from Defendant's operations of the facility.  Plaintiff has "organizational" standing to bring this action so long as its members have standing to sue in their own right, Plaintiff's interest in safeguarding the neighborhood's health is germane to its organizational purposes, and this suit will not require individual participation of members.  *See, e.g., Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000).  Plaintiff has satisfied these requirements.

Exposures to hazardous air pollutants are concrete and particularized injuries.  The Ninth Circuit has held that "evidence of a credible threat to the plaintiff's physical well-being from airborne pollutants" is sufficient to satisfy the injury in fact requirement.  *Hall v. Norton*, 266 F.3d 969, 976 (9th Cir. 2001).  Likewise, "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (quoting *Morton*, 405 U.S. at 735).

Plaintiff is not required to demonstrate "actual environmental harm" to establish injury in fact. *Ecological Rts. Found*, 230 F.3d at 1151. It is sufficient for Plaintiff to allege that Defendant's operation of diesel generators "caused 'reasonable concern' of injury" to plaintiff. *Covington v. Jefferson Cnty.*, 358 F.3d 626, 639 (9th Cir. 2004) (quoting *Laidlaw*, 528 U.S. at 183). In addition, environmental plaintiffs "need not show that they will prevail on their challenge asserting that there has been a violation of [the statute]; they need only show that the conduct they challenge sufficiently injures them." *Id.*, 358 F.3d at 639. A "credible threat of harm is sufficient to constitute actual injury for standing purposes, whether or not a statutory violation has occurred." *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002).

Here, Plaintiff's members live very close to the facility—some members live a mere 1,500 feet from the facility in the Alice Griffith public housing complex. Howard Decl. ¶ 1. The generators at the facility emit diesel pollution into the surrounding neighborhood, which is designated as an "Overburdened Community" and "Respiratory Care Zone" because of the already high levels of air pollution. ECF No. 1 ¶¶ 26-27. Defendant's diesel generators expose Plaintiff's members to "excess amounts of harmful diesel pollution, which is still being released into the neighborhood and atmosphere." *Id.* ¶ 24. Breathing these pollutants injures Plaintiff's members because "Diesel PM is extremely harmful to humans." *Id.* ¶ 28. As Defendant itself recognizes, exposures to diesel pollution cause "short and long-term adverse health effects in humans, which include lung cancer." *Id.* ¶ 4. These are sufficient allegations of injury in fact.

Plaintiff's members testify that Defendant's operation of the diesel generators prevents them from using and enjoying their homes and interferes with their recreational interests in visiting the state park. Howard Decl. ¶¶ 2-4; Moore Decl. ¶¶ 3-4; Simon Decl. ¶¶ 2-4. To protect their health, Plaintiff's members are forced to shut their windows to avoid the pollution from the generators. Howard Decl. ¶¶ 2-3; Moore Decl. ¶ 2. They can smell the diesel fumes from their homes, and their windows are coated with soot from the diesel generator's emissions. Howard Decl. ¶ 2; Moore Decl. ¶ 2. Plaintiff's members are fearful that Defendant will continue operating the diesel generators—and, indeed, will operate additional, even larger, diesel generators at the facility—which will cause them to breath dangerous pollutants that will affect their health and well-being. Moore Decl. ¶ 12; Simon Decl. ¶ 8.

Plaintiff's members are also frustrated with Defendant's failure to apply for permits for the diesel generators because it deprives them of an opportunity to participate in a public process where they can express their concerns.  Simon Decl. ¶¶ 7-8.

These are far from "bare procedural" injuries, as Defendant argues.  Motion 9:16.  An exposure to toxic chemicals is sufficient to establish injury in fact because "breathing even slightly polluted air entails a health risk." *Communities For A Better Env't v. Cenco Ref. Co*., 180 F. Supp. 2d 1062, 1075 (C.D. Cal. 2001).  Defendant's diesel emissions are a "credible threat to [Plaintiff's] physical well-being . . . ." *Hall*, 266 F.3d at 976.  The Supreme Court has found standing to assert claims of environmental violations for far less significant injuries: *e.g.,* "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing." *Defs. of Wildlife*, 504 U.S. at 562–563.

Defendant's heavy reliance on *Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n.*, 457 F.3d 941, 952 (9th Cir. 2006), is misplaced.  In that case, plaintiffs brought a challenge to a federal agency rulemaking regarding the transportation of radioactive waste on highways nationwide.  Plaintiffs in that action failed to "explain ***in any way*** how their health may be affected by [the] regulation," describe "what geographic areas are most likely to be affected," or allege "that they will be exposed to increases in radiation." *Id.* 457 F.3d at 953 (emphasis in original).  In stark contrast, here, Plaintiff's members allege that they are exposed to diesel particulate matter, live near the Center, and are concerned about the diesel pollution's impact on their health given Defendant's repeated violations of the Clean Air Act. This case is also unlike *Spokeo*, which involved allegations of "an intangible harm" from the alleged dissemination of credit reporting information on the internet. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), as revised (May 24, 2016).  The harm in this case is tangible.  Defendant's reliance on these cases is therefore unavailing.  Thus, Plaintiff's members have established injury in fact.

(2)    Plaintiff's members have suffered actual and imminent injuries because they have been exposed to hazardous air pollutants from Defendant's diesel generators.

Plaintiff plausibly alleges actual and imminent injuries that are neither hypothetical nor conjectural.  To establish actual and imminent injuries, Clean Air Act plaintiffs must allege that their members have more than "an abstract concern about clean air or an undifferentiated interest in a

particular application of the law." *Cenco,* 180 F. Supp. 2d at 1075.  They must allege that they "live and work in the immediate vicinity of the [defendant's polluting facility] and . . . that they have already been affected by the [facility's] operations."  *Id.* (citing *Laidlaw,* 528 U.S. 167 among other cases).  Plaintiff's members have satisfied this requirement.

Here, Plaintiff's members have "already been affected" by the facility's hazardous air emissions. *Cenco*, 180 F. Supp. 2d at 1075; Howard Decl. ¶¶ 2-4; Moore Decl. ¶¶ 2-5; Simon Decl. ¶ 4.  These exposures, and injuries to their recreational interests, were ongoing at the time the complaint was filed. *See, e.g.,* ECF No. 45 ¶¶ 7-9.  Specifically, Defendant admits that it was operating numerous diesel generators when the complaint was filed.  *Id.*  In addition, Defendant violated the Clean Air Act by installing large diesel generators without permits after the complaint was filed.  *Id.* at ¶ 14.  Plaintiff's members reasonably fear that this conduct will continue, causing further injuries.  Simon Decl. ¶ 8. These ongoing injuries readily meet the actual and imminent prong.  *Ecological Rts. Found.*, 230 F.3d at 1152 ("concerns about the effects of pollutant discharges from [defendant's] facilities adjoining the creek" satisfied actual and imminent prong).

(3)    Plaintiff's members' injuries are fairly traceable to the facility's emissions of hazardous air pollutants.

Plaintiff's injuries are directly caused by Defendant's conduct—*i.e.*, operating a large number of diesel generators without applying for an air quality permit.  To establish traceability, Plaintiff must show that the injury is causally linked or "fairly traceable" to Defendant's alleged misconduct, and not the result of misconduct of a third party not before the Court.  *See Defs. of Wildlife*, 504 U.S. at 560-61.

The exposures to hazardous air pollutants that injure Plaintiff's members are not the result of third party conduct.  Plaintiff alleges that Defendant's operation of the facility causes their injuries.  ECF No. 1 ¶ 28; Simon Decl. ¶ 4; Howard Decl. ¶ 2; Moore Decl. ¶ 4.  The fairly traceable element does not require plaintiff to show that Defendant's emissions, and only the Defendant's emissions, are the source of the threatened harm.  *Hall*, 266 F.3d at 977.  It is sufficient for Plaintiff to assert that emissions from Defendant's facility have contributed to the pollution that threatens Plaintiff's members interests.  *Id.*; *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 995 (9th Cir. 2000) (traceability does not mean

1  plaintiff must show to a scientific certainty that defendant's effluent caused the precise harm suffered by

2  the plaintiff).

3       This case is not like *Bellon*, where environmental plaintiffs challenged federal agencies' failure

4  to regulate greenhouse gas emissions from refineries in Washington.  *Washington Env't Council v.*

5  *Bellon*, 732 F.3d 1131, 1143 (9th Cir. 2013).  Greenhouse gases "disperse in the global atmosphere" and

6  cannot be linked to "localized environmental harm."  *Id.*  In contrast, hazardous air pollutants, such as

7  diesel particulate matter, have direct and localized impacts on human health.  Defendant itself

8  recognizes that diesel particulate matter is dangerous to human health.  ECF No. 1 ¶ 28.  Plaintiff's

9  members can smell the diesel fumes and see the soot emitted from the facility covering their windows.

10 Moore Decl. ¶ 2; Howard ¶¶ 2-3.

11      Defendant argues, incorrectly, that the harm is not traceable to Defendant's conduct because it

12 involves a failure to obtain an air quality permit—and the District is responsible for issuing air quality

13 permits.  *See* Motion 17:13-17.  The Ninth Circuit has rejected this precise argument.  A citizen may

14 bring suit against a polluter for unpermitted emissions even when the regulator has determined that no

15 permit is required—any finding to the contrary "would frustrate the purposes" of the statute's

16 "empowerment of citizen suit."  *Ass'n to Protect Hammersley*, 299 F.3d at 1011-1012.  Moreover,

17 Defendant's speculation that requiring Defendant to apply for an air quality permit would not change the

18 facility's emissions of hazardous air pollutants (Motion 14:8 to 15:11) is unavailing.  Environmental

19 plaintiffs are not required to show that a defendant's compliance with permitting requirements would

20 mitigate or end the pollution.  *Nw. Env't Def. Ctr. v. Owens Corning Corp.,* 434 F. Supp. 2d 957, 968

21 (D. Or. 2006) ("Plaintiffs are not obligated to also show that the permit request would be denied, or that

22 the design of the plant or its emissions will be altered as a consequence of this litigation.").

23          (4)    Plaintiff's complaint plausibly alleges injuries that are redressable by an order
                  imposing civil penalties or enjoining Defendant's use of diesel generators without
24                a permit.

25              (a)    Civil penalties will redress Plaintiff's injuries.

26      The Court can redress Plaintiff's injuries by imposing civil penalties to deter future violations.

27 Civil penalties are appropriate in light of Defendant's repeated violations of the Clean Air Act, including

28 at the time the action was initiated and after the complaint was filed.

The Clean Air Act's citizen suit provision allows citizens to seek civil penalties to penalize past violations and deter future violations. 42 U.S.C. § 7604(a)(1). Civil penalties serve to deter future violations and thereby redress the injuries that prompted a citizen suitor to commence litigation. *San Francisco Baykeeper v. Tosco Corp.*, 309 F.3d 1153, 1159 (9th Cir. 2002); *Covington*, 358 F.3d at 639 (imposition of civil penalties is "a credible deterrent against future violations via the imposition of fines."). It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Laidlaw*, 528 U.S. 167 at 189. "If it did, the courts would be compelled to leave the defendant . . . free to return to his old ways." *Id.*

The City's purported removal of only nine of the sixteen generators after receiving the Alliance's notice of violation does not absolve the City of its liability for civil penalties. In *Laidlaw,* the Supreme Court found that even where defendant had completely shut down the polluting facility, civil penalties could redress the environmental plaintiff's injuries: "for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress. Civil penalties can fit that description." *Laidlaw*, 528 U.S. at 185-186. Similarly, in *San Francisco Baykeeper v. Tosco Corp.*, the Ninth Circuit reasoned that defendant's sale of the polluting facility to another company after the complaint was filed did not make the "deterrent effect of civil penalties any less potent," because the imposition of penalties would demonstrate to any future owner that violations at the same facility would be costly. *Baykeeper,* 309 F.3d at 1160. Here, as in *Baykeeper*, the "facility is still operating, and there is a possibility that violations will recur at the facility." *Id*. The harm of recurring violations is not speculative here. The facility lacks electrical service (ECF No. 45 at ¶ 10), making it reasonably likely that Defendant will "return to its old ways" and install diesel generators to provide power to the facility. Thus, civil penalties would serve to deter Defendant from returning to its old ways.

Unlike *Steelco* and *WildEarth Guardians,* the alleged violations here were ongoing and threatened at the time the complaint was filed, the violations continued after the complaint was filed, and there is no assurance that the violations will not recur in the future. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 86 (1998) (suit brought to address past violations); *WildEarth Guardians v. Pub.*

*Serv. Co. of Colorado*, 690 F.3d 1174, 1186 (10th Cir. 2012) (power plant remedied all violations after the complaint was filed and there was no reasonable prospect of recurrence). Moreover, in *WildEarth Guardians*, unlike here, the defendant did not have a "history or pattern of [Clean Air Act] violations warranting a deterrent." *Id.* at 1186.

In this case, at least seven diesel generators, but likely more, were still operating without permits when the complaint was filed. ECF No. 45 at ¶¶ 8-9.[1] Even assuming only seven generators were operating when the complaint was filed, those generators emitted diesel particulate matter in excess of the SIP's permitting threshold for toxic air pollutants, as Plaintiff's expert testifies. Williams Decl. ¶ 3 at Exh. B (Kapahi Expert Report at ¶ 7). Moreover, there is no dispute that Defendant installed large diesel generators at the facility without permits after the complaint was filed. ECF No. 45 at ¶ 14. Defendant has also not corrected its failure to provide the District with information about the generators' emissions with respect to Defendant's pending application to install more generators at the facility. ECF No. 1 ¶¶ 53-58; Williams Decl. ¶ 2 (Leong Depo Tr. 26:3-12). Thus, Defendant's alleged violations were ongoing when the complaint was filed and there is a risk of recurrence. Civil penalties will redress these violations.

> (b) An order enjoining Defendant from using diesel generators without first applying for air quality permits will redress Plaintiff's injuries.

If Plaintiff prevails in this action, Plaintiff's injuries will be redressed by an order requiring Defendant to cease operating the generators without first seeking an authority to construct and permit to operate from the District. In an environmental case alleging defendant's failure to obtain a permit, the Ninth Circuit held that an order requiring defendant to obtain a permit provides "complete" relief to plaintiff—even where the state agency had determined no permit was required. *As'n to Protect Hammersley*, 299 F.3d 1007 at 1015. Similarly, an order enjoining construction of a facility until

---

[1] Mr. Macaraeg's January 4, 2023 email requesting the removal of "9 of the 16" generators in order to "fall below the cumulative 50HP permit requirement" and Mr. Lim's January 6, 2023 email directing Urban Alchemy to "arrange with the vendor to remove 9 temp generator light towers" (Williams Decl. ¶ 4 Exh. C) controvert Mr. Macaraeg's assertion that "[b]y December 22, 2022 . . . the City discontinued use of nine of the sixteen portable diesel light towers at this time." ECF No. 45 ¶ 8.

"completion of the permit review process" would redress plaintiff's injuries in a case alleging

environmental harm. *Friends of the Earth v. U.S. Navy*, 841 F.2d 927, 932 (9th Cir. 1988).

Defendant places great weight on the fact that even if Defendant is required to apply for a permit,

the outcome of the permitting process is unknown. Motion 17:13-17. While this is true, it is irrelevant

to redressability. The uncertainty of the permitting process does not mean an injunction would not

redress the injuries. *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 460 F. Supp. 2d 1185, 1191

(E.D. Cal. 2006). Requiring Defendant to seek government approval to operate diesel generators at the

facility will, at the very minimum, ensure the District has the relevant information it needs to evaluate

the generators. This is important because the District's staff testified that the District was never

provided with information sufficient to evaluate whether the diesel generators trigger new source toxics

review. Williams Decl. ¶ 2 Exh. A (Leong Depo. Tr. 26:3-12). Requiring Defendant to apply for

permits would also allow for the Alliance's and the general public's right to participate in the review

process. *Ass'n of Irritated Residents*, 460 F. Supp. 2d at 1191.

The *Myorkas* case cited by Defendant, which involved a National Environmental Policy Act

action against a federal agency, is not to the contrary. The holding in that case is necessarily limited to

claims against regulators where the standard for redressability depends on plaintiff's showing that "the

agency's failure to account for environmental consequences [under NEPA] affects" plaintiff's legally

protected interests. *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1013 (9th

Cir.), cert. denied, 142 S. Ct. 713 (2021). This is the standard in actions against regulators because

when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of

regulation) of someone else, much more is needed" to establish redressability. *Defs. of Wildlife*, 504

U.S. 555, 562. Here, in contrast, the lawsuit is against the polluter, not the regulator. Plaintiff's injuries

can be redressed by requiring the polluter to apply for a permit.

## II.    Plaintiff's complaint states a claim for relief under the Clean Air Act.

Plaintiff's complaint states a plausible claim that Defendant has violated the Clean Air Act by

operating at least sixteen diesel generators at the facility without first applying for a permit. Under the

plain language of the SIP, the generators require permitting because they exceed 50 horsepower in the

aggregate. The generators' emissions also exceed the SIP's permitting threshold for diesel particulate

1  matter.  Defendant's reliance on a District engineer's emails regarding whether a permit was required is

2  unavailing because this type of post hoc, poorly reasoned, informal communication from an agency's

3  staff is not entitled to deference from the Court.

**A. Under the plain language of the Clean Air Act and the SIP, the facility's diesel generators are not exempt from the SIP's permitting requirements.**

The facility's diesel generators are not exempt from Clean Air Act permitting requirements because their aggregate horsepower and emissions of hazardous air pollutants exceed the SIP's permitting thresholds.  Defendant's reliance on the SIP's exemption for individual diesel engines under 50 horsepower (SIP Reg. 2-1-114) is unavailing.  Defendant ignores the SIP's provisions mandating aggregation.  *See* SIP Reg. 2-1-213 & 2-1-221 (ECF No. 44 at Exh. F).

The SIP requires individual pollution-causing equipment at a single facility to be assessed in the aggregate for permitting purposes.  This is to prevent facilities from using large numbers of relatively small sources of hazardous pollution, which fall below permitting thresholds, but which have the same, if not a more significant, impact on air quality and public health.  To that end, the SIP defines "source" as any "machine, equipment, operation, contrivance, or related groupings of such which may produce and/or emit air pollutants."  SIP Reg. 2-1- 221.  Similarly, the SIP defines "facility" as any "source, building, structure or installation that emits or may emit any air pollutant; or any aggregation of such sources, . . . that are . . . under common ownership or control . . . ."  SIP Reg. 2-1-213.

The Clean Air Act and EPA regulations require aggregation as well, as explained by the Supreme Court in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 854 (1984).  In that case, the Supreme Court approved the EPA's "plantwide" or "bubble" approach to regulating sources of pollution within a single facility—where related sources must be considered in the aggregate at a facility under common ownership.  *See generally Chevron*, 467 U.S. 837, 854 (1984).  This is because "Congress clearly envisioned that entire plants could be considered to be single 'sources.'" *Alabama Power Co. v. Costle*, 636 F.2d 323, 397 (D.C. Cir. 1979).  In fact, in 1990, Congress amended the Clean Air Act to codify the plantwide/bubble approach; the statute now expressly requires sources of hazardous air pollutants at facilities to be treated in the aggregate.  *See* 42 U.S.C. § 7412(a)(1) & (a)(2). The statute defines "sources" of hazardous air pollutants as "any stationary source or group of stationary

sources located within a contiguous area and under common control . . . ."  42 U.S.C. § 7412(a)(1) &

(a)(2); *see also* 40 C.F.R. § 70.2 (defining sources in even broader manner than the statute).  Thus, under

the Clean Air Act and the SIP's plain language, Defendant's diesel generators must be treated as a single

source subject to the SIP's permitting requirements.

Ignoring the definitions of a "source" and "facility" as the aggregate of related polluting

equipment, Defendant contends that its diesel generators are individually exempt because they are each

less than 50 horsepower.  Motion 18:23-24.  The exemption on which Defendant relies provides that

certain "equipment is exempt from the requirements of [obtaining an authority to construct or permit to

operate], only if the . . .the source does not require permitting pursuant to Section 2-1-319 . . . ."  SIP

Reg. 2-1-114.  Among such equipment are "Internal combustion (IC) engines and gas turbines with a

maximum output rating less than or equal to 50 bhp."  SIP Reg. 2-1-114 at 2.1.

Defendant's argument fails for two reasons.  First, the generators, which must be analyzed in the

aggregate, had an output of approximately 81 horsepower.  Indeed, the exemption for less than 50

horsepower engines incorporates the term "source," (SIP Reg. 2-1-114) which is defined to require

aggregation (SIP Reg. 2-1-221).

There is no dispute that a single 81 horsepower diesel generator would require an authority to

construct and permit to operate.  Yet Defendant contends that aggregation does not apply to horsepower;

Defendant contends it only applies to emissions.  Defendant, not citing any authority for this

proposition, is mistaken.  Horsepower is a proxy for emissions.  The higher the horsepower of the diesel

generators, the higher the emissions.  This is why EPA's regulations under the Clean Air Act set more

stringent emissions standards for generators with higher horsepower.  *See, e.g.,* 40 C.F.R. § 63.6590(c)

(authorizing more lenient compliance standards for non-road internal combustion engines with less than

or equal to 500 horsepower compared with engines above 500 horsepower).

Second, the diesel generator's emissions must be evaluated in the aggregate to determine if they

require a permit.  The parties agree on this point.  *See* Motion at 19:23-28.  Individual sources are not

exempt from permitting when they exceed emissions thresholds for hazardous air pollutants.

Specifically, the 50 horsepower exemption does not apply if aggregate emissions of hazardous air

pollutants exceed certain thresholds.  *See* SIP Reg. 2-1-114 (exemption applies only if "the source does

not require permitting pursuant to section 2-1-319); *see also* SIP Reg. 2-1-319.2 (referencing SIP Reg.

2-1-316).  The SIP sets forth emissions thresholds for hazardous air pollutants that trigger permitting

"notwithstanding any exemption" for individual equipment including engines with less than 50

horsepower.  SIP Reg. 2-1-316.  If a source exceeds these thresholds, it must demonstrate to the District

that it will adopt measures to ensure toxic emissions are minimized if not eliminated.  SIP Reg. 2-1-316

at 316.1 (requiring adoption of best available control technology for toxics *i.e.* "TBACT").

Here, Plaintiff's expert has testified that the emissions from the generators exceed the SIP's

toxics permitting threshold for diesel particulate matter by over 383 times.  Williams Decl. ¶ 3 Exh. B

(Kapahi Expert Report at ¶ 9).  Thus, the City was required to undergo permitting for the diesel

generators in which it would have had to "demonstrate to the satisfaction of the [District]" that

Defendant would utilize the best technology available to reduce emissions of hazardous air pollutants.

SIP Reg. 2-1-316.

Defendant's argument that Plaintiff cannot "force the District to begin regulating small, exempt

engines" (Motion at 20:10) misses the mark.  In this lawsuit, Plaintiff does not ask the District to do

anything; rather, the action seeks to force Defendant to apply for permits when it operates a large

number of diesel generators at a single facility.  Moreover, as discussed, the main purpose of the citizen

suit provision is to allow environmental plaintiffs to bring actions when the regulators have declined to

do so, as here.  The District does not have exclusive jurisdiction to determine whether Defendant's

emissions of hazardous air pollutants require a permit.  *See Ass'n to Protect Hammersley,* 299 F.3d at

1014.  Thus, Defendant's sixteen diesel generators are not exempt from the SIP's permitting

requirements.

## B.    The District's engineer's emails interpreting the SIP are not entitled to deference.

Defendant urges the Court to defer to informal email correspondence from one of the District's

permitting engineers—written more than a year after the generators had started emitting hazardous air

pollutants without permits—in which the District attempts to justify its decision not to commence an

enforcement action.  Motion at 20:5-6; ECF No. 44 at Exh. E (setting forth the email correspondence).

Courts do not defer to hasty, post hoc, poorly reasoned, and informal correspondence from agency staff.

After this lawsuit was filed, the District's permitting engineer argued, in informal email correspondence with Plaintiff's counsel, that the sixteen generators are exempt from permitting because they are not a "related grouping" of equipment.  ECF No. 44 Exh. E.  The District engineer asserted that the generators are not a related grouping because "they could not have been grouped together to fulfil their function of distributing light adequately around the 312,000 square foot site for safety and security."  *Id.* Exh. E at AD101722.  In addition, the engineer contended that the generators were exempt because "it was necessary to distribute that many lighting units across the large property to provide adequate nighttime lighting for safety and security."  *Id.* Exh. E at AD101724.

The permitting engineer's analysis is poorly reasoned, hasty, and fundamentally flawed.  The SIP does not contain any exemption for equipment simply because it is purportedly "necessary" for the facility's owner's purposes.  Adopting such a rule would exempt any source so long as the owner argued the equipment was "necessary" for the project.  Nor does the SIP provide that a "related grouping" of polluting equipment must be capable of being "grouped together to fulfil their function" in order to be a "related grouping."  *See, e.g.,* SIP Reg. 2-1-221.  Indeed, at the engineer's deposition, she candidly admitted that whether the generators were purportedly "necessary" is not supported by any SIP provisions.  Williams Decl. ¶ 2 Exh A (Leong Depo Tr. 29:16-20).  The engineer similarly admitted that there is no SIP provision that supports her argument that a "related grouping" of polluting equipment must have the capacity to be "grouped together to fulfill their function."  *Id.* Exh. A (Leong Depo Tr. at 36:1-25).

Because the engineer's interpretation is belied by the plain language of the SIP and the Clean Air Act's requirement that sources are analyzed in the aggregate for permitting purposes, it is not entitled to deference.  The Court must apply the plain language of the SIP, as Defendant concedes.  *See* Motion at 18:25-28.  An agency interpretation that "rests on a reading of the [law] that is persuasive only to the extent one scrutinizes the provision without the illumination of the rest of the statute," is not entitled to deference.  *Gonzales v. Oreg*on, 546 U.S. 243, 274 (2006).  Here, the engineer's interpretation only makes sense if one ignores the SIP's definitions of "source" and "facility," which mandate aggregation.

The email correspondence is also not entitled to deference because it was not subject to any procedural formalities that evince the careful consideration of a formal agency interpretation.  An

agency interpretation is not entitled to deference when there is no "notice-and-comment," the

interpretation "was not the product of 'careful consideration . . . over a long period of time,'" and the

interpretation lacks the "procedural rigor that would more closely approximate a formal rulemaking."

*Sierra Club v. Trump*, 929 F.3d 670, 693 (9th Cir. 2019).  Similarly, courts do not defer to agency

"litigation positions" made without any "relatively formal administrative procedure, but through internal

decisionmaking not open to public comment or determination."  *Price v. Stevedoring Servs. of Am., Inc.*,

697 F.3d 820, 827 (9th Cir. 2012).

      Here, the District has not made any formal determination, through a process akin to rulemaking,

that the facility's generators are exempt from permitting.  Rather, one of the District's permitting

engineers expressed a post hoc justification, in informal email correspondence, for not enforcing the SIP

over a year after the generators began operating.  The interpretation was developed behind closed doors.

Further, although the District could have gone through the process of issuing a formal "certificate of

exemption" for the diesel generators, it chose not to make any formal finding.  Williams Decl. ¶ 2 Exh.

A (Leong Depo, 28:6-12).  The District apparently did not want its engineer's faulty interpretation to be

publicly scrutinized.

      In addition, the emails in this case were not carefully considered over a long period of time.  *See*

*Trump*, 929 F.3d at 693.  Rather, the District's interpretation "emerged in a matter of weeks."  *See id*.

The emails are also "entirely conclusory" and "without analysis."  *See id.*  At her deposition, the

permitting engineer who authored the emails candidly admitted that her central arguments in the emails

are not supported by the SIP.  Williams Decl. ¶ 2 Exh. A (Leong Depo Tr. 29:16-20 and 36:1-25).

      The emails do not address "technical questions," as Defendant suggests.  Motion at 19:1-3.

Whether Defendant was required to seek a permit before it emitted hazardous air pollutants does not

depend on complex scientific questions.  Rather, the outcome depends on the plain meaning of the SIP's

terms.  This is unlike the cases defendant cites which involved, among other things, highly technical

"best available control technology determinations."  *See* Motion at 19:1-14 9 (citing *Alaska Dep't of*

*Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 490 (2004) among others).  Thus, the Court owes no

deference to emails from the permit engineer.

C.    **The SIP's permitting program is enforceable in this citizen suit.**

Plaintiff seeks to enforce the SIP's fundamental permitting requirement: a facility must obtain a permit before it pollutes subject to narrow exceptions. *See* SIP Reg. 2-1-301 & 2-1-302. SIP regulations that "announce concrete, objective permitting requirements" are enforceable. *Cenco,* 180 F.Supp.2d at 1077. Accordingly, alleged failures to obtain preconstruction and operating permits that are incorporated in a SIP are enforceable through the Clean Air Act's citizen suit provision. *Id.,* 180 F.Supp.2d at 1081*; Coal. for Clean Air v. VWR Int'l, LLC,* 922 F. Supp. 2d 1089, 1102 (E.D. Cal. 2013) (applying *Cenco* and finding SIP provision was concrete and objective).

Here, as in *Cenco*, Plaintiff "asserts violations of procedural permitting requirements and points to specific SIP requirements for each violation it alleges." *Cenco,* 180 F. Supp. 2d at 1080. Defendant contends that two permitting standards identified in the complaint are unenforceable—the anti-"circumvention" provision and the "complete application" provision. Motion at 20:14-21:10. Defendant is mistaken.

First, the SIP's anti-circumvention provision reflects a concrete and objective permitting requirement. "A person shall not undertake or authorize any practice intended or designed to evade or circumvent District Rules or Regulations." SIP Reg. 1-101. This standard is objective. Credible evidence of a "practice intended or designed to evade" the SIP would prove a violation of the anti-circumvention provision. For instance, evidence that Defendant intended to withhold relevant information from the District, or intended to avoid permitting by using a large number of relatively small diesel generators, may suffice to show anti-circumvention. Although this federally-approved SIP provision will require the Court to weigh the evidence on both sides, the standard of intentional evasion is far from "purely subjective."

Second, the SIP imposes procedural requirements on permit applications, which Plaintiff alleges Defendant violated by omitting the emissions from diesel generators Defendant was already operating when it applied for permits to operate even more diesel generators. "Every application of an authority to construct or a permit to operate shall be submitted to the [District] on the forms specified, and shall contain . . . [s]ufficient information for the [District] to determine the emissions from the sources that are the subject of the application . . . ." SIP Reg. 2-1-402. Defendant disputes the

applicability of this provision to its conduct (Motion 20:15 to 21:1) but that does not establish that the regulation is "purely subjective" and unenforceable. Under the regulation, the question is whether the permit application contained "sufficient information for the [District]" to "determine the emissions from the sources that are the subject of the application." SIP Reg. 2-1-402. In other words, if the District is not able to determine the emissions with the information provided by the applicant, the standard has not been met. This is a concrete and objective standard. Plaintiff will show, as demonstrated by the District engineer's deposition testimony, that the District was not given the information it needed to determine the emissions. For these reasons, Plaintiff can enforce the anti-circumvention and permitting application requirements in the SIP under the citizen suit provision.

### III. Plaintiff's motion to supplement the complaint under Rule 15(d) should be granted because it properly alleges post-complaint violations of the Clean Air Act.

Plaintiff seeks leave to supplement the complaint to allege that Defendant violated the SIP after the complaint was filed. *See* Fed. R. Civ. Pro. 15(d); ECF No. 40. The supplemental complaint alleges that Defendant installed and/or operated two large unpermitted generators (each well above 50 horsepower) after the initial complaint was filed even though Defendant knew it did not have air quality permits for those generators. ECF No. 40-1 at ¶¶ 27-28. Defendant does not dispute that it installed the generators without permits. ECF No. 45 at ¶ 14. Rather, Defendant contends that the violations were "minor," and thus the amendment would be futile. (Motion 21:11 to 23:4). Defendant is wrong.

Plaintiff's supplemental complaint is not futile because, as with Plaintiff's initial complaint, it states a claim for relief based on Defendant's repeated failures to obtain permits before operating and installing sources of pollution. Even a purportedly "minor violation" of the Clean Air Act is a violation that is actionable in federal court. This is because a "strict liability standard" applies to Clean Air Act violations. *United States v. Trident Seafoods Corp.*, 92 F.3d 855, 861 (9th Cir. 1996); *United States v. Ben's Truck & Equip., Inc.*, No. CIV. S-84-1672 MLS, 1986 WL 15402, at *3 (E.D. Cal. May 12, 1986) ("Strict liability is essential to meet the purpose of the Act to protect and improve the quality of the nation's air."). Because Defendant admits that it installed the large diesel generators without permits, Plaintiff has stated a claim for relief. Defendant's contention that the post-complaint violations were "minor" is an issue for the penalties phase. Moreover, the post-complaint violations further establish

1  Plaintiff's standing to enjoin and penalize Defendant's ongoing pattern of violating the SIP's permitting

2  requirements.

3       Plaintiff strongly disputes Defendant's contention that installing large generators without

4  permits—after causing excessive pollution from unpermitted diesel generators for over a year—is a

5  minor violation.  Indeed, Plaintiff alleges that Defendant installed the generators without permits, and

6  likely operated them for several months as evidenced by the deliveries of diesel fuel to the facility.  ECF

7  No. 40-1 at ¶ 28.  That is a serious violation.  The parties' dispute about the severity of the violations

8  should be resolved along with the other remedies issues.

9       Defendant's heavy reliance on the District's issuance of a "notice to comply" (Motion at 22:1-

10  28) in response to the violations is misplaced.  A notice to comply is a decision by the District ***not*** to

11  enforce the violation in an administrative or judicial proceeding.  Defendant's assertion that the District

12  has "taken its enforcement action via the NTC" (Motion at 22:26-27) is an oxymoron.  Moreover, citizen

13  suits are designed to allow environmental plaintiffs to pursue actions when the regulators do not.  *Sierra*

14  *Club v. Portland Gen. Elec. Co.,* 663 F. Supp. 2d 983, 997 (D. Or. 2009).  In addition, the District's

15  notice to comply rule is not even part of the federally-approved SIP regulations, and thus is not germane

16  to this action alleging violations of federal law.  *See generally* SIP Reg. 2-1 (ECF No. 44 at Exh. F).

17  Thus, the motion for leave to supplement the complaint is not futile and should be granted.

18  **IV.    The District cannot be joined as a party in this action under Ninth Circuit precedent.**

19       Defendant's request to join the District as a necessary party should be denied.  State and federal

20  agencies are not necessary parties in citizen environmental enforcement cases.  *Hammersley*, 299 F.3d at

21  1014.  Courts can provide complete relief without the participation of state and federal environmental

22  agencies.  *Id.* 299 F.3d at 1014-1015.  Here, as in *Hammersley*, Defendant can "be ordered to terminate

23  [operations of the diesel generators] unless it obtains a permit, a form of relief that is available

24  irrespective of [the agency's] participation." *Id.*  Thus, Defendant's request to join the District as a party

25  should be denied.

26

27

28

V.    **The extrinsic testimony and evidence submitted with Defendant's motion for judgment on the pleadings presents disputed facts that should be resolved at the summary judgment and/or trial stage.**

Defendant's reliance on disputed testimony and evidence demonstrates that the issues raised in its motion for judgment on the pleadings should be decided at the summary judgment and/or trial stage of this action. Defendant asserts a Rule 12(b)(1) jurisdictional "factual attack" by relying on Defendant's extrinsic evidence and testimony. This evidence and testimony presents the Court with disputed facts, that are not tailored to addressing whether Plaintiff has standing to bring this citizen suit.

Defendant's arguments based on extrinsic evidence should more appropriately be decided on a motion for summary judgment or at the trial stage of this proceeding—and not on a motion for judgment on the pleadings. *See* Fed. R. Civ. Proc. 12(d); *Hal Roach Studios*, 896 F.2d 1at 1550. For example, the testimony presented in the Declaration of Marc Macaraeg introduces disputed evidence that is intertwined with the merits of Plaintiff's claims and does not have any bearing on this Court's jurisdiction to adjudicate this matter. In addition, Mr. Macaraeg's declaration is controverted by both Mr. Macaraeg's deposition testimony and the City's document production in this case.

Plaintiff, out of an abundance of caution, has submitted its own declarations in the event that the Court decides to weigh evidence and determine facts on this pleadings challenge. *See Savage v. Glendale Union High Sch.,* 343 F.3d1036, 1039 n. 2 (9th Cir. 2003). If the Court does convert Defendant's pleadings challenge to a motion for summary judgment, that motion must be denied because it presents numerous disputed issues of material fact. Fed. R. Civ. Pro. 56(a).

VI.    **The Court should grant leave to amend the complaint if the Court holds that the complaint is deficient.**

Plaintiff requests leave to amend the complaint if the Court finds that the allegations are not sufficient to establish standing or that the complaint fails to state a claim. Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment. *Eminence Cap.*, 316 F.3d at 1052; *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Here, Plaintiff can cure any perceived deficiencies in the complaint by amendment. Thus, leave to amend should be granted if the Court grants Plaintiff's motion for judgment on the pleadings.

1  DATED:  October 30, 2023

2

3

4                                                    /s/ Lucas Williams

5                                    Lucas Williams
                                   Attorneys for Plaintiff Candlestick Heights Community
6                                    Alliance

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28